Jerry Rang CLAYTON & Wilford Fritz
Gallegos, Appellant,

v.

The STATE of Texas, Appellee.

No. 63980.

Court of Criminal Appeals of Texas,
En Banc.

May 25, 1983.

Rehearing Denied July 20, 1983.

John J.C. O'Shea, Lubbock, for appellant.

Jack D. Young, Dist. Atty., Muleshoe, Gerald C. Carruth, Asst. Atty. Gen., Austin, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

OPINION

CLINTON, Judge.

These are appeals from convictions for engaging in organized criminal activity. Specifically, appellants, along with some 28 other individuals were indicted and tried for conspiring to commit unlawful manufacture of methamphetamine with the intent to establish, maintain and participate in a combination or profits of a combination.[1] The facts of the offense are not in issue and need not be recited.

By their first ground of error appellants complain of the trial court's refusal to strike the testimony of Mike Rogers, an informant and coindictee, who was told by the prosecutors before he took the stand, about prior testimony adduced during the trial, in violation of the rule. Articles 36.-03–36.06, V.A.C.C.P.

The record reflects that during Rogers' crossexamination, the following transpired:

"Q: And Mrs. Avery shot up some cocaine?

A: Yes, sir.

Q: Now, you know that she has made the accusation that you delivered the cocaine to her, do you not?

A: Yes, sir.

---

1. V.T.C.A. Penal Code, § 71.02 provides in relevant part:
"(a) A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he ... conspires to commit one or more than one of the following:
\* \* \* \* \* \*
(5) unlawful manufacture, delivery, disposition, or distribution of a controlled substance. . . .
\* \* \* \* \* \*
(c) Conspiring to commit an offense under this section is of the same degree as the most serious offense listed in subdivisions (1) through (5) of subdivision (a) of this section that the person conspired to commit."
V.T.C.A. Penal Code, § 71.01 provides:
"In this chapter,

(a) 'combination' means five or more persons who collaborate in carrying on criminal activities, although:
(1) participants may not know each others identity;
(2) membership in the combination may change from time to time; and
(3) participants may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations.
(b) 'conspires to commit' means that a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement. An agreement constituting conspiring to commit may be inferred from the acts of the parties."

Q: *Who told you about that accusation?*[2]

A: I don't recall exactly. *I think Mr. Young.*

MR. BROWN: Your Honor, we move to strike all of his testimony because that is a violation of the rule.

THE COURT: Mr. Young was permitted to talk to the witness.

MR. BROWN: Well, he is not permitted to tell him what other witnesses testified to in this Courtroom. That is the purpose of the rule, to keep that from happening, Your Honor.

THE COURT: No, sir.

MR. BROWN: I move to strike his testimony as in violation of the rule.

THE COURT: The motion is overruled.

MR. BROWN: Note my exception.

\*   \*   \*   \*   \*   \*

THE COURT: Counsel will recall the instructions of the Court.[3]

MR. BROWN: Your Honor, I recall the instructions of the Court, but I understand the purpose of the rule to be to keep one witness from being told what the testimony of other witnesses is so that he cannot tailor his story to fit, and I believe we have a clear violation of the rule, and that is the reason that I made my objection, and my motion.

THE COURT: Certainly you are entitled to your opinion, Mr. Brown. The objection is overruled, and your motion is overruled.

MR. BROWN: Note my exception, please.

Q (By Mr. O'Shea): All right. Mr. Rogers, specifically, if I may inquire, since Mr. Brown brought this up, exactly what did Mr. Young tell you about the testimony previously testified here in Court? Could you tell us, please?

A: Just that's what had been said by Mikki.

Q: Tell us exactly what he said was said by Mikki.

A: *He asked me if I had given it to her.*

Q: All right. Tell us what you—

A: I told him I didn't remember exactly who gave it to her; that it was hidden.

Q: What else did he tell you about what was testified to previously?

A: *That's all.*

Q: That is the only thing he said?

A: (Witness nodding head affirmatively.)

Q: Nothing else?

A: No, sir."

Defense counsel proceeded to crossexamine the witness on this matter for four more pages of transcription. Then,

"Q: All right. Now, do you know about somebody saying that you gave two pounds to somebody to front for a little methamphetamine? Did you hear about that?

A: Yes, sir.

Q: Two pounds of marijuana?

A: Yes, sir.

Q: *Who told you about the two pounds* of marijuana, please, having previously been stated?

A: *Mr. Carruth.*

Q: Mr. Carruth told you about that? Exactly what did Mr. Carruth tell you about that? Repeat in his—and when was this conversation, please?

---

**2.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

**3.** After explaining to the witnesses that the rule had been invoked and what that meant, the trial judge concluded,

"During times that you are waiting outside, you will not discuss this case with anyone, or allow anyone to discuss it with you, or listen to any report about this trial or its progress, except by permission of the Court. Permission is granted at this time, in case you are approached by any one or a combination of the lawyers in the case, and I think you will recognize them as those seated at the tables around the perimeter that surrounds you at this time. If you are approached by any one or a combination of those lawyers, you may go with that lawyer or lawyers and out of the hearing of anyone else, and discuss the case with him or them."

A: Yesterday.

Q: Yesterday? And where was it held at?

A: In the motel room.

Q: How long have you been here in—I am not trying to find out what the name of the hotel is, or anything like that.

Where are you physically staying at in abeyance for the testifying this date? Where are you—what town?

A: Muleshoe.

Q: When was this conversation, or talk had at your motel room?

A: Last night.

Q: All right. And during this period of time, how long did your conference take place with Mr. Carruth?

A: A minute, maybe less.

Q: A minute or—all right. Specifically, how did you happen to go there, or have a conversation just for a minute? He just passed by?

A: I stayed there last night.

Q: What?

A: I stayed there.

Q: And it was in your motel room?

A: Yes, sir.

Q: And the conversation took one minute? All right. Tell us in as much detail, and that is only last night, so it is within 24 hours, tell us what was said from the time the door opened, or you walked in or whatever the case may be, and when the conversation—and tell us who was talking.

A: I walked in, and Mr. Carruth said hi, how are you doing; I said fine. We just—

Q: He said, how?

A: Hi.

Q: Okay. Go ahead.

A: I then asked him if he had had a good supper. I knew he had been gone to supper, and he said fine, fine. We were watching television, and *he was reading,* and came up that *he asked me, he said, Keith Swinford*—or that it had been—I don't remember if he—yes, he said, Keith Swinford *had testified that Marvin had* *told him that I had given him two pounds of grass,* and he asked me *if that was true. I told him no. That was the end of it.*

\* \* \* \* \* \*

Q: But Mr. Young told you about Mikki Avery saying that you gave her the 'coke?'

A: Yes, sir.

Q: And Mr. Carruth told you about the accusation that Marvin Joe Wooley told them, or told Keith Swinford, you had given him two pounds of marijuana in connection with this financing this methamphetamine lab, or something to this effect, to go down to Houston?

A: Yes, sir.

MR. O'SHEA: Your Honor, I must, at this time, in view of these two specific instances of the Prosecution relating prior testimony when the rule has been invoked, move, most respectfully, to terminate him testifying and move to strike all his testimony as this is a clear abuse of discretion, we submit most respectfully, for him to have been told anything concerning this thing. Now, they may make inquiries, but for him to have been told what I consider to be the most, I submit, devastating incidents, it is a clear abuse of discretion for him to be permitted to continue his testimony on the stand. We move to strike, most respectfully.

THE COURT: The motion to strike is overruled.

MR. O'SHEA: Note our exception, Your Honor."

■ It is true that counsel were permitted under the court's instructions to discuss the case with the witnesses; but counsels' informing a witness who has not yet taken the stand of the content of prior testimony is not within the discussions authorized. Article 36.05, supra. See generally Moses, Criminal Defense Sourcebook 426, § 13.15. However, in this case, no reversible error is shown.

The content of the testimony communicated by the prosecutors to the witness,

Rogers, was not of such a nature or consequence as to require reversal of these convictions. *Root v. State,* 169 Tex.Cr.R. 382, 334 S.W.2d 154 (Tex.Cr.App.1960). At most it reflected on the credibility of Rogers and not on material issues raised by the prosecution of appellants. Further, Rogers was thoroughly cross-examined about his conversations with the prosecutors, as well as the incidents related to him, and admitted his involvement in one of them. This ground of error is overruled. See *Price v. State,* 626 S.W.2d 833 (Tex.App.—Corpus Christi 1981).

■ In their second ground of error, appellants contend "the trial court erred in allowing into evidence the fruits of an illegal search and seizure of the farm house in Bailey County because said search and seizure and submission of exhibits were all in violation of appellants' constitutional rights under the State and federal constitutions."

Specifically, appellants contend the search was conducted without a valid search warrant; in support of this contention they claim the affidavit upon which the warrant issued failed to conform to the requirements of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), in that it failed to set forth sufficient information from which a neutral magistrate could independently conclude probable cause existed to search, and it failed to set forth "specific instances or an adequate number of instances in which the officer relied upon the information in similar type cases from the informant and found it to be credible." This contention is without merit.

The affidavit averred in pertinent part: "Affiant was *advised by a confidential informant that he had been to the above described place and premises within the past 24 hours and had personally observed Hal Tibbets, & Will (last name unknown) & several other persons* whose names, identities, and descriptions were unknown to him, *in possession of a large quantity of methamphetamine.* Informant advised affiant he had observed paraphanalia [sic] used in the manufacture of methamphetamine. Said infor-

mant is familiar with the controlled substance methamphetamine & its manufacture. Affiant has kept the premises under surveillance for a number of hours & the conduct of the suspects are highly suspicious in that one party remains outside in a vehicle as lookout vehicles [sic] passing by are followed, often without lights, & other suspicious conduct. *Affiant has known said informant for the past 6 months* & believes the above information to be reliable because said *informant has given information to affiant on numerous occasions in the past involving drug trafficking & on every occasion his information [sic] proven to be reliable, true & correct.*

Affiant received the above information from said informant on the 22nd day of December, 1977."

This affidavit is sufficient to meet the requisites of *Aguilar,* supra, and we so hold.

Appellants, however, in their argument under this ground also contend that a material part of the probable cause averment "is incorrect."

It is true that the informant testified at trial that he had not "personally observed" anyone on the premises "in possession" of methamphetamine. The affiant testified his informant's exact words were that the named people "had made a pound of methamphetamine the night before and were going to make two pounds tonight." The affiant testified he assumed from this that his informant had actually seen the drug on the premises.

Appellants have not alleged in any manner that the incorrect information in the affidavit was a deliberate falsehood alleged knowingly by the affiant or alleged with a reckless disregard for the truth. See *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Thus, nothing is presented for review.

Notwithstanding appellants' failure to advance the *Franks* contention with precision on appeal, we observe the trial court permitted a full hearing for purposes of allowing the defendants to go behind the

"four corners" of the affidavit in this regard even though such was not required at the time of appellants' trial. *Ramsey v. State,* 579 S.W.2d 920 (Tex.Cr.App.1979). Furthermore, there is no evidence the affiant intended to include a deliberate falsehood in the affidavit or exhibited a reckless disregard for the truth.[4] Compare *Juarez v. State,* 586 S.W.2d 513 (Tex.Cr.App.1979).

Appellants' second ground of error is accordingly overruled.

■ By ground of error three, appellants contend:

"The trial court erred in failing to grant the dismissal of the indictment in that [it] fails to state a cognizable offense under the laws of the State of Texas and further because the statute upon which the indictment was based is in conflict with another statute under the Code of Criminal Procedure [sic] and in violation of appellant's [sic] rights under the State and federal constitution."

This ground of error is patently multifarious. Article 40.09, § 9, V.A.C.C.P. And even though the ground of error contends the indictment is *fundamentally* defective, all relevant argument thereunder complains of its failure to give adequate *notice,* a defect of form, which may not be raised for the first time on appeal. *American Plant Food Corp. v. State,* 508 S.W.2d 598 (Tex. Cr.App.1974). Appellants do not refer to any ruling of the trial court rejecting these contentions. Neither has our independent review of the record revealed that appellants raised them in the trial court in any form. Thus, nothing is presented for review.

However, we will nevertheless review the contentions which are of constitutional magnitude, in the interest of justice.

■ The indictment returned against these appellants is three legal sized pages

long and need not be set out here in full to determine its fundamental sufficiency to allege an offense. Essentially, that indictment alleged appellants and others on or about August 1, 1977, did,

"... with the intent to establish, maintain and participate in a combination, and in the profits of a combination, conspire to commit the offense of unlawful manufacture of a controlled substance, namely, methamphetamine, and did then and there agree among themselves, and with each other, to engage in conduct constituting said offense, to-wit: to intentionally and knowingly manufacture a controlled substance, namely, methamphetamine, and in pursuance of such agreement the said defendants performed overt acts as follows, to-wit:

[16 separate acts, identified as to date, place and actor(s) are set out]."

The statute under which appellants were prosecuted became effective June 10, 1977 and is set out in relevant part in n. 1, *ante.* The offense alleged has neither a "required result," nor a "negation of any exception to the offense" element. See V.T.C.A. Penal Code, § 1.07(a)(13)(C) and (D); it only contains "forbidden conduct" and "required culpability" elements. *Id.,* subsections (A) and (B).

The "forbidden conduct" element of the offense is:

"conspires to commit [5] unlawful manufacture of a controlled substance."

This is also the "nature of conduct" element of conduct. See *Lugo-Lugo v. State,* 650 S.W.2d 72 (Tex.Cr.App.1983) (Opinion Concurring). And it is clear there are no "circumstances surrounding the conduct" or "result of the conduct" elements of conduct in the offense in question. *Id.*

---

4. The informant testified at trial that he had been told by one of the defendants that they had made a pound of the drug the night before and would be making two pounds that night. Thus, the source of the informant's assertion of fact to the affiant was as reliable as if he had observed it.

5. "Conspiring to commit" is composed of an "agreement" with criminal intent, followed by an "overt act" in pursuance thereof. See § 71.01(b) in n. 1, *ante;* see also V.T.C.A. Penal Code, § 15.02, recited in n. 6, *post.*

The only mental element expressly provided by § 71.02, supra, is:

" ... with the intent to establish, maintain, or participate in a combination or in the profits of a combination .... "

It is clear that these intended results are not essential to commission of the offense charged for, as we have already observed, there is no "required result" element of the offense and, perforce, no "result of conduct" element of conduct.

"Anytime the result intended by the actor is unnecessary to commission of the offense charged, or is different from the actual result, it is an 'accompanying mental state' which provides the requisite culpability to the 'conduct' or 'nature of the conduct,' .... Another way to view it is that the 'conduct' is the means the actor employs to effect the 'result' he intends. Conceptualized in this way, the 'conduct' and the 'accompanying mental state' are, literally, inseparable."

*Lugo-Lugo,* supra, at 88 (Opinion Concurring).

In sum, an indictment which is alleged in the language of § 71.02(a)(5) is adequate to allege an offense against the laws of this State; since the indictment before us includes each element of the offense proscribed by § 71.02(a)(5), supra, it is sufficient to support convictions obtained thereon, and we so hold.

■ Appellants also contend that § 71.-02, supra, conflicts directly with V.T.C.A. Penal Code, § 15.02,[6] and "therefore both are void in that each allows for a conviction ... for the same crime, but they have different penalties to be assessed .... "

Appellants overlook the fact that at the time of the commission of the offense alleged against them, they could not have been prosecuted under § 15.02, supra, because it did not apply to "offenses defined by other laws" such as the manufacture of methamphetamine which is denounced by

the Controlled Substances Act. V.T.C.A. Penal Code, § 1.03(b).

This third ground of error is without merit.

■ Finally, appellants complain of the trial court's admission of telephone records. As we understand it, appellants contend those records were not the "best evidence;" that the State failed to establish an adequate predicate for their admissibility under Vernon's Ann.Civ.Stat. Art. 3737e, the Business Records Act (BRA); that they were not shown to be trustworthy; and, no connection between the defendants and the telephone numbers was established.

This ground, too, is multifarious, but we shall briefly address it nevertheless.

Contrary to appellants' contention, the record reveals the trial judge refused to admit the questioned records until each requirement of the BRA was met, and did refuse admission of State's Exhibit No. 71; neither did the trial court admit State's Exhibit No. 72 until the custodian had returned to New Mexico overnight to compare his copies with microfiche kept in his office in order to verify the accuracy of the copies as true and correct.

The socalled "predicate for admission" is merely a group of statutory safeguards prescribed for assuring the reliability of the matters stated in hearsay records which are declared admissible by law if those safeguards are effected. See *Todd v. State,* 598 S.W.2d 286 (Tex.Cr.App.1980). Appellants thoroughly crossexamined the custodial witnesses about possible errors in the records. See *Paulus v. State,* 633 S.W.2d 827 (Tex. Cr.App.1981). Appellants' complaints clearly go to the weight and not the admissibility of the records.

■ Moreover, these records were admitted as a circumstance tending to establish a relationship between the alleged coconspirators during the course of, and in further-

---

**6.** Section 15.02, supra, provides in part:

"(a) A person commits criminal conspiracy if, with intent that a felony be committed:

(1) he agrees with one or more persons that they or one of them engage in conduct that would constitute the offense; and

(2) he or one or more of them performs an overt act in pursuance of the agreement."

ance of, the alleged conspiracy. Under the circumstances of this case, a direct connection between appellants and the telephone numbers was not required.

This fourth ground of error is overruled.

The judgments of conviction are affirmed.

CAMPBELL, J., not participating.