**Opinion filed December 23, 2010**



## In The

# Eleventh Court of Appeals

_____

## No. 11-09-00055-CR

_____

## PATRICK LAMAR ANDREWS, JR., Appellant
## V.
## STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR34231**

### M E M O R A N D U M   O P I N I O N

The jury convicted Patrick Lamar Andrews, Jr. of murder. Appellant pleaded "true" to two enhancement allegations. The trial court found the enhancement allegations to be true and sentenced appellant as a habitual offender to confinement for life. The trial court ordered appellant's sentence to be served consecutively with appellant's life sentence for a prior aggravated robbery conviction. We affirm.

### *Issues on Appeal*

Appellant presents three issues for review. In his first issue, he contends that the trial court erred in failing to instruct the jury on self-defense. In his second issue, he contends that the trial court erred in allowing testimony by a witness after a violation of the witness exclusion rule

set forth in Rule 614 of the Rules of Evidence[1] occurred. In his third issue, appellant challenges the legal and factual sufficiency of the evidence to support his conviction.

*Sufficiency of the Evidence*

To determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, *5 (Tex. Crim. App. Oct. 6, 2010). The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).

The record shows that appellant and Martin Enriquez worked together at Cooper Construction. Enriquez gave appellant rides to and from work. They were friends and went out drinking beer together. Enriquez lived with his girlfriend, Marta Garcia, in an apartment on Texas Avenue in Midland. On October 25, 2007, appellant spent the night at their apartment. Garcia testified that appellant brought his keys, wallet, change, and a knife, which was in a case, into the apartment. Appellant left clothes and other personal belongings in the back of Enriquez's pickup. Before that, appellant had been staying in a motel.

The next morning, Enriquez and appellant left for work. Garcia never saw Enriquez alive again. After work, Enriquez and appellant cashed their checks and went to a bar called "Your Place." Ricky Nicholson was with a group of men drinking at the bar. Nicholson testified that, at some point, his group, appellant, and Enriquez decided to go to Jaguars, which was a strip club near Odessa. Nicholson said that they left Your Place at about 7:00 p.m. and that it was ten to twelve miles from Your Place to Jaguars. Appellant and Enriquez went to Jaguars in a pickup. Appellant and Enriquez drank Budweiser at Jaguars, and they left before Nicholson's group did. Nicholson said that appellant and Enriquez were at Jaguars for one and one-half to two hours.

At about 9:00 p.m., William Hernandez and his girlfriend, Amy Valenzuela, were traveling from Odessa to Midland on Highway 80. Hernandez saw a pickup on the shoulder of the highway and a man lying on the road in a pool of blood by the front tire on the driver's side of the pickup. The record shows that the man was Enriquez. Hernandez said that Enriquez was in a fetal position facing the road and that he was unresponsive. Hernandez called 911, and

---

[1]*See* TEX. R. EVID. 614.

paramedics and law enforcement personnel arrived on the scene. Kevin Shelton, an EMT, testified that there was a lot of blood around Enriquez and in the pickup. Enriquez needed to be transported to the hospital as soon as possible. Robert Wade, a firefighter paramedic, testified that Enriquez had a significant amount of blood loss. He said that Enriquez was unconscious and had six or seven stab wounds in his abdominal area and a large laceration on his left arm.

Enriquez was transported to the hospital. He was alive when the ambulance arrived at the hospital. Shelton Viney, M.D., a general and vascular surgeon, performed surgery on Enriquez in an attempt to save his life. Dr. Viney discovered that Enriquez had multiple lacerations to multiple organs inside his abdomen. Enriquez also had a stab wound to his left arm that went completely through the arm. Dr. Viney testified that the laceration on Enriquez's left arm began to bleed profusely. The brachial artery, which is a major blood vessel, in Enriquez's left arm had been cut. After the surgery, Enriquez was moved to the intensive care unit. Dr. Viney testified that, despite the fact that everything that could have been done had been done, Enriquez was in a "futile situation." Therefore, the decision to cease further medical treatment was made. Enriquez was pronounced dead on October 27 at about 11:17 a.m. Dr. Viney said that Enriquez bled to death from the injuries he sustained from the stab wounds.

Midland County Sheriff's Deputy Jayden Perkins retrieved Enriquez's personal effects at the hospital. These items included Enriquez's clothes, a wallet, and some money. Deputy Perkins testified that most of Enriquez's personal effects had blood on them. Dollar bills that Enriquez had been carrying in his shirt pocket had tear marks and blood on them from where Enriquez had been cut. At the hospital, Deputy Perkins also retrieved a RAZR cell phone that had been in Enriquez's possession. The record shows that this cell phone belonged to appellant. Deputy Perkins gave the items he retrieved to Deputy Ron Wright, who took them back to the scene where Enriquez had been found on the highway and gave them to Midland County Sheriff's Investigator Beau Estes.

Investigator Estes processed the evidence at the scene. The scene was about ten miles away from Jaguars. Investigator Estes took pictures of Enriquez's pickup and the blood that was on the road and inside the pickup. He had the pickup transported to a sally port at the sherriff's department and then continued his investigation. He found, photographed, and inventoried a number of items that were in the bed of the pickup. Investigator Estes found appellant's birth certificate in a notebook that was in a pink laundry basket in the bed of the pickup. Investigator

Estes also found appellant's dentures in the pink laundry basket. The name "P. Andrews" was inscribed on the dentures. Investigator Estes also found a black knife sheath, without a knife, in the laundry basket. He never found the knife that went into the sheath. Investigator Estes said that law enforcement personnel did not find the murder weapon.

Investigator Estes testified that he had received training in bloodstain pattern analysis, and he testified in detail about the blood that was found inside the pickup. Based on his investigation, Investigator Estes concluded that Enriquez had been driving the pickup and pulled over to the shoulder of the highway and that a passenger in the front seat then stabbed Enriquez. Investigator Estes testified that, after the stabbing began, either Enriquez got out or the passenger pulled him out of the pickup.

Investigator Estes testified that the T-shirt Enriquez had been wearing at the time of the stabbing had blood all over it. The T-shirt had what appeared to be five stab marks, with widths of about two millimeters. Investigator Estes said that he lifted some fingerprints from the pickup but that he could not make any positive identification from the fingerprint evidence. He also collected DNA swabs of blood from the pickup and sent them to the Department of Public Safety laboratory in Lubbock for testing. The swabs were compared with a swab of blood belonging to Enriquez. The only DNA found during the testing of the swabs taken from the blood in the pickup belonged to Enriquez.

Law enforcement personnel found a bloody cell phone in front of the Town & Country Offices, about 200 feet away from where Enriquez's pickup had been found. The phone belonged to Enriquez. It was sent to the Department of Public Safety laboratory in Austin for fingerprint testing. However, it did not contain a suitable latent print for identification purposes.

Based on his investigation, Investigator Estes concluded that appellant was a person of interest. Midland County Sheriff's Investigator Jody Hill attempted to locate appellant on the night of the stabbing. He retrieved appellant's cell phone that had been in Enriquez's possession at the hospital. Investigator Hill testified that he called numbers that had been programmed into the phone in his attempt to find appellant but that he did not find appellant that night.

Garcia testified that she looked at a knife collection at the sheriff's department in an attempt to locate a knife that looked like the knife appellant had at her apartment the night before the murder. She testified that she located a knife that resembled appellant's knife. The State introduced the knife into evidence for demonstrative purposes.

4

Appellant's daughter, Ashley Michelle Yarbrough, saw a news story about appellant on television. She testified that appellant called her about an hour after she saw the story. During the call, appellant said, "I guess you have already heard it." She responded, "Yeah." Appellant then said, "I don't want you to think I'm a monster." Ashley replied, "It's too late for that," and hung up the phone. Ashley's mother, Christy Yarbrough, testified that she received a phone call from appellant on October 27 at about 4:00 a.m. Appellant told her that "he got in a fight" and that "he might have hurt somebody." Appellant also told her that "[Enriquez] hit him in the jaw" and that "he had stabbed [Enriquez]." Appellant also said that his jaw hurt.

Christy's daughter, Tiffany Murphy, lived with her. Murphy testified that appellant came to her house on a date around October 26, 2007. She said that appellant was acting scared and nervous and that, while he was in the house, his picture came on the news on television. Murphy overheard appellant talking on the phone. Appellant said that "[he] and [Enriquez] got into an argument and he blacked out; and the next thing he knew, there was blood."

Dexter Eugene Traylor testified that he knew appellant. Traylor saw appellant in the parking lot of Bowens Grocery the evening of November 2. Traylor believed that appellant was trying to disguise himself because he had his hair tucked under his cap. Traylor asked appellant, "Did you kill that guy?" Appellant said that he had killed Enriquez. Appellant told Traylor that "he messed up bad." Appellant said that he and the guy had been out drinking and that the guy had kept hitting and fighting him. Traylor testified that appellant then said the following: "Well, I told m----------r don't put his hands on me anymore. And he hit me. So the next thing, you know, man, I killed him, you know." Appellant also said that the guy had hit him in the eye. Traylor said that he told appellant, "Well, brother, that sounds like self-defense to me. Why don't you turn yourself in?" Appellant said that he could not turn himself in because nobody would believe him.

Virlee Evans was previously common-law married to appellant. Evans testified that they had maintained an "on and off" friendship. Appellant called her and told her that "he was in trouble," that "he had stabbed somebody," and that "he was sorry."

A warrant was issued for appellant's arrest. Appellant did not return to work after the murder. On November 2, 2007, Department of Public Safety Sergeant Phillip Breeding heard a dispatch on an attempt to locate appellant. The caller stated that appellant was in the area of

Bowens Grocery. Sergeant Breeding found appellant in the alley behind the grocery store. Sergeant Breeding placed appellant into custody. Appellant said, "You know what I did."

Investigator Hill saw appellant on November 5. Investigator Hill testified that, at that time, he did not see any injuries on appellant. Investigator Estes saw appellant soon after he was arrested. Investigator Estes testified that he inspected appellant for wounds and that appellant did not have any wounds.

Viewing all of the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. Appellant and Enriquez were with each other at Jaguars. Soon after they left Jaguars, Hernandez discovered Enriquez in a pool of blood on the shoulder of the highway. Enriquez had been stabbed multiple times. Appellant's personal belongings were found in the bed of Enriquez's pickup. A bloody cell phone was found in the vicinity of the pickup. Appellant told Christy Yarbrough that he had stabbed Enriquez. He also told Evans that he had stabbed somebody. He told Traylor that he had killed "that guy." The evidence was legally sufficient to support appellant's conviction.

Appellant also challenges the factual sufficiency of the evidence. The Texas Court of Criminal Appeals has now held in *Brooks* that there is "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis*[2] factual-sufficiency standard"; that the *Jackson v. Virginia* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt"; and that "[a]ll other cases to the contrary, including *Clewis*, are overruled." *Brooks*, 2010 WL 3894613, at *1, *8, *14 (footnote added). Accordingly, a challenge to the factual sufficiency of the evidence is no longer viable. We note that appellant did not have the benefit of the opinion in *Brooks* when this case was briefed. We have already determined that the evidence was sufficient to support appellant's conviction under the *Jackson v. Virginia* standard. Therefore, appellant's third issue is overruled.

### Trial Court's Refusal to Instruct the Jury on Self-Defense

Appellant requested a jury instruction on self-defense. The trial court denied the requested instruction. A trial court must charge the jury fully and affirmatively on the law

---

[2]*Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

applicable to every issue raised by the evidence. TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). If evidence from any source raises a defensive theory, it must be included in the court's charge. *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001); *Taylor v. State*, 856 S.W.2d 459, 470-71 (Tex. App.—Houston [1st Dist.] 1993), *aff'd*, 885 S.W.2d 154 (Tex. Crim. App. 1994). A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence regardless of whether that evidence is strong, weak, unimpeached, or contradicted and regardless of what the trial court may think about the credibility of the defense. *Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007); *Ferrel*, 55 S.W.3d at 591. However, if the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue. *Ferrel*, 55 S.W.3d at 591.

A person is justified in using force against another in self-defense "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a) (Vernon Supp. 2010). A person is justified in using deadly force against another in self-defense "if the actor would be justified in using force against the other [person] under Section 9.31" and "when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force." *Id.* § 9.32(a)(1), (a)(2)(A). "Deadly force" is defined as "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3).

Appellant used deadly force against Enriquez. Therefore, appellant was entitled to an instruction on self-defense only if the evidence satisfied the requirements of Sections 9.31 and 9.32. *Preston v. State*, 756 S.W.2d 22, 25 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). In the absence of evidence of use or attempted use of deadly force by the victim, the Section 9.32 defense is not available, and the accused is not entitled to a jury instruction on self-defense. *Werner v. State*, 711 S.W.2d 639, 644 (Tex. Crim. App. 1986); *Welch v. State*, 908 S.W.2d 258, 264 (Tex. App.—El Paso 1995, no pet.); *Preston*, 756 S.W.2d at 25.

Appellant relies on the testimony of Christy Yarbrough and Traylor in arguing that the evidence raised the issue of self-defense. Christy Yarbrough testified that appellant told her he had gotten into a fight and Enriquez had hit him in the jaw. Traylor testified that appellant told him "the guy" had kept hitting and fighting him and had hit him in the eye. This testimony

shows that Enriquez may have used non-deadly force against appellant by hitting him or punching him in the eye and jaw. However, there was no evidence that Enriquez used or attempted to use deadly force against appellant. *See Ogas v. State*, 655 S.W.2d 322, 324 (Tex. App.—Amarillo 1983, no pet.) (A blow to the face, whether made with an open or closed hand, did not constitute the use or attempted use of deadly force.). Therefore, the trial court did not err in refusing to instruct the jury on self-defense. *Werner*, 711 S.W.2d at 644; *Welch*, 908 S.W.2d at 264; *Preston*, 756 S.W.2d at 25. Appellant's first issue is overruled.

*The Rule of Exclusion of Witnesses*

Appellant argues that Garcia and Investigator Estes violated Rule 614 of the Rules of Evidence before Garcia's testimony relating to her identification of the knife at the sheriff's department and that, therefore, the trial court abused its discretion in allowing such testimony and in admitting the knife that Garcia identified into evidence. Rule 614 provides for the exclusion of witnesses from the courtroom during trial. The purpose of the Rule is to prevent the testimony of one witness from influencing the testimony of another. *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005); *State v. Saylor*, 319 S.W.3d 704, 709-10 (Tex. App.— Dallas 2009, pet. ref'd); *Phillips v. State*, 64 S.W.3d 458, 459 (Tex. App.— Houston [1st Dist.] 2001, no pet.). Once the Rule is invoked, witnesses are instructed by the trial court that they may not converse with one another or with any other person about the case, except by permission from the court. TEX. CODE CRIM. PROC. ANN. art. 36.06 (Vernon 2007); *Saylor*, 319 S.W.3d at 710. Further, the trial court must exclude witnesses from the courtroom during the testimony of other witnesses. Rule 614; *Saylor*, 319 S.W.3d at 710. Counsel may discuss the case with a witness who has been placed under Rule 614 as long as the discussion occurs out of the presence of other witnesses. *Archer v. State*, 703 S.W.2d 664, 666 n.1 (Tex. Crim. App. 1986); *Clayton v. State*, 652 S.W.2d 950, 953 (Tex. Crim. App. 1983).

In this case, appellant invoked the Rule. The trial court instructed the potential witnesses that they were not to hear the testimony of other witnesses or to discuss the testimony of any other witness. The trial court also instructed the potential witnesses that they could speak to the attorneys in the case.

Investigator Estes testified before Garcia did. During Garcia's testimony, she testified that appellant brought a knife, which was inside a case, into her apartment on October 25, 2007. Following Garcia's testimony, the trial court recessed the case for a lunch break. After lunch,

other witnesses testified and then the State recalled Garcia as a witness. Garcia testified that, during the lunch break, she looked at a knife collection at the sheriff's department and located a knife that resembled the knife appellant had in her apartment on October 25, 2007. Over appellant's objection, the trial court admitted the knife as demonstrative evidence.

During cross-examination, Garcia testified that someone at the sheriff's office asked her if she could pick out a similar knife. At the bench, appellant's counsel stated, "I think there has been a violation of the rule of sequestration, if someone is talking to her about picking out a knife." The trial court addressed the issue outside the jury's presence. In response to questions from the trial court, Garcia said that the prosecutor asked her whether she could find a knife that was similar to the knife that she had seen on appellant. Garcia said that an officer took her to the sheriff's department but that she could not remember his name. A prosecutor informed the trial court that Investigator Estes took Garcia to the sheriff's department.

The trial court asked Garcia whether she discussed the case with Investigator Estes on the way to the sheriff's department and on their way back to the courthouse. Garcia responded, "No, just about that he had some knives that I could look through. And that was about it." Garcia also said that Investigator Estes asked her if she could find a similar knife. She said that Investigator Estes put some knives on a table in his office at the sheriff's department and asked her, "[W]hich one do you think it would be?" Garcia told the trial court that "[she] pointed one out." The trial court asked Garcia, "What other conversation did you have with him?" Garcia responded, "That was it." The trial court asked Garcia, "So you went to the Sheriff's Office, because [the prosecutor] instructed you to go over there and see if you could find a knife that was similar to the one you had seen in [appellant's] possession?" Garcia responded, "Yes." The trial court concluded that no violation of the Rule occurred.

Appellant has not shown that a violation of Rule 614 occurred. The record contains no evidence that Investigator Estes and Garcia conferred about Investigator Estes's testimony or that Investigator Estes influenced Garcia's testimony in any way. In her initial testimony, Garcia testified about the knife that appellant brought to her apartment. She gave this testimony before she went with Investigator Estes to the sheriff's department. The prosecutor instructed Garcia to go to the sheriff's department so that she could attempt to locate a similar knife that could be offered as demonstrative evidence. Garcia testified that she located a similar knife. This testimony did not corroborate any of Investigator Estes's testimony. We conclude that the trial

9

court did not err in concluding that no violation of Rule 614 occurred.  Additionally, assuming that a violation of Rule 614 occurred, we conclude that appellant was not harmed by the violation because Garcia's testimony about her identification of a similar knife did not overlap with Investigator Estes's testimony.  *Rodriguez v. State*, 772 S.W.2d 167, 169 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd) (The appellant was not harmed where the witnesses did not testify on a common subject.).  Appellant's second issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


December 23, 2010

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.