Opinion filed December 23,
2010

 

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00055-CR 

                                                    __________

 

                      PATRICK
LAMAR ANDREWS, JR., Appellant

                                                             V.

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 385th District Court

                                                          Midland
County, Texas

                                                   Trial
Court Cause No. CR34231

 



 

                                            M
E M O R A N D U M   O P I N I O N

            The
jury convicted Patrick Lamar Andrews, Jr. of murder.  Appellant pleaded “true”
to two enhancement allegations.  The trial court found the enhancement
allegations to be true and sentenced appellant as a habitual offender to confinement
for life.  The trial court ordered appellant’s sentence to be served
consecutively with appellant’s life sentence for a prior aggravated robbery
conviction.  We affirm.

Issues
on Appeal

            Appellant
presents three issues for review.  In his first issue, he contends that the
trial court erred in failing to instruct the jury on self-defense.  In his
second issue, he contends that the trial court erred in allowing testimony by a
witness after a violation of the witness exclusion rule set forth in Rule 614
of the Rules of Evidence[1]
occurred.  In his third issue, appellant challenges the legal and factual
sufficiency of the evidence to support his conviction.

Sufficiency
of the Evidence

            To
determine if the evidence is legally sufficient, we must review all of the
evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Brooks v. State, No. PD-0210-09, 2010 WL 3894613, *5 (Tex. Crim.
App. Oct. 6, 2010).  The jury, as the finder of fact, is the sole judge of the
weight and credibility of the witnesses’ testimony.  Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon 2007), art. 38.04
(Vernon 1979).

            The
record shows that appellant and Martin Enriquez worked together at Cooper
Construction.  Enriquez gave appellant rides to and from work.  They were
friends and went out drinking beer together.  Enriquez lived with his
girlfriend, Marta Garcia, in an apartment on Texas Avenue in Midland. On
October 25, 2007, appellant spent the night at their apartment.  Garcia
testified that appellant brought his keys, wallet, change, and a knife, which
was in a case, into the apartment.  Appellant left clothes and other personal
belongings in the back of Enriquez’s pickup.  Before that, appellant had been
staying in a motel.

            The
next morning, Enriquez and appellant left for work.  Garcia never saw Enriquez
alive again.  After work, Enriquez and appellant cashed their checks and went
to a bar called “Your Place.”  Ricky Nicholson was with a group of men drinking
at the bar.  Nicholson testified that, at some point, his group, appellant, and
Enriquez decided to go to Jaguars, which was a strip club near Odessa.  Nicholson
said that they left Your Place at about 7:00 p.m. and that it was ten to twelve
miles from Your Place to Jaguars.  Appellant and Enriquez went to Jaguars in a
pickup. Appellant and Enriquez drank Budweiser at Jaguars, and they left before
Nicholson’s group did.  Nicholson said that appellant and Enriquez were at
Jaguars for one and one-half to two hours.       At about 9:00 p.m., William
Hernandez and his girlfriend, Amy Valenzuela, were traveling from Odessa to
Midland on Highway 80.  Hernandez saw a pickup on the shoulder of the highway
and a man lying on the road in a pool of blood by the front tire on the driver’s
side of the pickup.  The record shows that the man was Enriquez.  Hernandez
said that Enriquez was in a fetal position facing the road and that he was
unresponsive.  Hernandez called 911, and paramedics and law enforcement
personnel arrived on the scene.  Kevin Shelton, an EMT, testified that there
was a lot of blood around Enriquez and in the pickup.  Enriquez needed to be
transported to the hospital as soon as possible.  Robert Wade, a firefighter
paramedic, testified that Enriquez had a significant amount of blood loss.  He
said that Enriquez was unconscious and had six or seven stab wounds in his
abdominal area and a large laceration on his left arm.
            Enriquez was transported to the hospital.  He was alive when the
ambulance arrived at the hospital.  Shelton Viney, M.D., a general and vascular
surgeon, performed surgery on Enriquez in an attempt to save his life.  Dr.
Viney discovered that Enriquez had multiple lacerations to multiple organs
inside his abdomen.  Enriquez also had a stab wound to his left arm that went
completely through the arm.  Dr. Viney testified that the laceration on
Enriquez’s left arm began to bleed profusely.  The brachial artery, which is a
major blood vessel, in Enriquez’s left arm had been cut.  After the surgery, Enriquez
was moved to the intensive care unit.  Dr. Viney testified that, despite the
fact that everything that could have been done had been done, Enriquez was in a
“futile situation.”  Therefore, the decision to cease further medical treatment
was made.  Enriquez was pronounced dead on October 27 at about 11:17 a.m.  Dr.
Viney said that Enriquez bled to death from the injuries he sustained from the
stab wounds.

            Midland
County Sheriff’s Deputy Jayden Perkins retrieved Enriquez’s personal effects at
the hospital. These items included Enriquez’s clothes, a wallet, and some money.
Deputy Perkins testified that most of Enriquez’s personal effects had
blood on them.  Dollar bills that Enriquez had been carrying in his shirt
pocket had tear marks and blood on them from where Enriquez had been cut.  At
the hospital, Deputy Perkins also retrieved a RAZR cell phone that had been in
Enriquez’s possession. The record shows that this cell phone belonged to
appellant. Deputy Perkins gave the items he retrieved to Deputy Ron Wright,
who took them back to the scene where Enriquez had been found on the highway
and gave them to Midland County Sheriff’s Investigator Beau Estes.

            Investigator
Estes processed the evidence at the scene.  The scene was about ten miles away
from Jaguars.  Investigator Estes took pictures of Enriquez’s pickup and the blood
that was on the road and inside the pickup.  He had the pickup transported to a
sally port at the sherriff’s department and then continued his investigation.  He
found, photographed, and inventoried a number of items that were in the bed of
the pickup.  Investigator Estes found appellant’s birth certificate in a
notebook that was in a pink laundry basket in the bed of the pickup.  Investigator
Estes also found appellant’s dentures in the pink laundry basket.  The name “P.
Andrews” was inscribed on the dentures.  Investigator Estes also found a black
knife sheath, without a knife, in the laundry basket.  He never found the knife
that went into the sheath.  Investigator Estes said that law enforcement
personnel did not find the murder weapon.

            Investigator
Estes testified that he had received training in bloodstain pattern analysis,
and he testified in detail about the blood that was found inside the pickup.  Based
on his investigation, Investigator Estes concluded that Enriquez had been driving
the pickup and pulled over to the shoulder of the highway and that a passenger
in the front seat then stabbed Enriquez.  Investigator Estes testified that,
after the stabbing began, either Enriquez got out or the passenger pulled him
out of the pickup.

            Investigator
Estes testified that the T-shirt Enriquez had been wearing at the time of the
stabbing had blood all over it.  The T-shirt had what appeared to be five stab
marks, with widths of about two millimeters.  Investigator Estes said that he
lifted some fingerprints from the pickup but that he could not make any
positive identification from the fingerprint evidence.  He also collected DNA
swabs of blood from the pickup and sent them to the Department of Public Safety
laboratory in Lubbock for testing.  The swabs were compared with a swab of
blood belonging to Enriquez.  The only DNA found during the testing of the
swabs taken from the blood in the pickup belonged to Enriquez.

            Law
enforcement personnel found a bloody cell phone in front of the Town &
Country Offices, about 200 feet away from where Enriquez’s pickup had been
found.  The phone belonged to Enriquez.  It was sent to the Department of
Public Safety laboratory in Austin for fingerprint testing.  However, it did
not contain a suitable latent print for identification purposes.

            Based
on his investigation, Investigator Estes concluded that appellant was a person
of interest.  Midland County Sheriff’s Investigator Jody Hill attempted to
locate appellant on the night of the stabbing.  He retrieved appellant’s cell
phone that had been in Enriquez’s possession at the hospital.  Investigator
Hill testified that he called numbers that had been programmed into the phone in
his attempt to find appellant but that he did not find appellant that night.

            Garcia
testified that she looked at a knife collection at the sheriff’s department in
an attempt to locate a knife that looked like the knife appellant had at her
apartment the night before the murder.  She testified that she located a knife
that resembled appellant’s knife.  The State introduced the knife into evidence
for demonstrative purposes.

            Appellant’s
daughter, Ashley Michelle Yarbrough, saw a news story about appellant on
television.  She testified that appellant called her about an hour after she
saw the story.  During the call, appellant said, “I guess you have already
heard it.”  She responded, “Yeah.”  Appellant then said, “I don’t want you to
think I’m a monster.”  Ashley replied, “It’s too late for that,” and hung up
the phone.  Ashley’s mother, Christy Yarbrough, testified that she received a
phone call from appellant on October 27 at about 4:00 a.m.  Appellant told her
that “he got in a fight” and that “he might have hurt somebody.”  Appellant
also told her that “[Enriquez] hit him in the jaw” and that “he had stabbed
[Enriquez].”  Appellant also said that his jaw hurt.

            Christy’s
daughter, Tiffany Murphy, lived with her.  Murphy testified that appellant came
to her house on a date around October 26, 2007.  She said that appellant was
acting scared and nervous and that, while he was in the house, his picture came
on the news on television.  Murphy overheard appellant talking on the phone.  Appellant
said that “[he] and [Enriquez] got into an argument and he blacked out; and the
next thing he knew, there was blood.”                                           

            Dexter
Eugene Traylor testified that he knew appellant.  Traylor saw appellant in the
parking lot of Bowens Grocery the evening of November 2.  Traylor believed that
appellant was trying to disguise himself because he had his hair tucked under
his cap.  Traylor asked appellant, “Did you kill that guy?”  Appellant said
that he had killed Enriquez.  Appellant told Traylor that “he messed up bad.”  Appellant
said that he and the guy had been out drinking and that the guy had kept
hitting and fighting him.  Traylor testified that appellant then said the
following: “Well, I told m----------r don’t put his hands on me anymore.  And
he hit me.  So the next thing, you know, man, I killed him, you know.” 
Appellant also said that the guy had hit him in the eye.  Traylor said that he
told appellant, “Well, brother, that sounds like self-defense to me. Why don’t
you turn yourself in?”  Appellant said that he could not turn himself in
because nobody would believe him.

            Virlee
Evans was previously common-law married to appellant.  Evans testified that
they had maintained an “on and off” friendship.  Appellant called her and told
her that “he was in trouble,” that “he had stabbed somebody,” and that “he was
sorry.”

             A
warrant was issued for appellant’s arrest.  Appellant did not return to work after
the murder.  On November 2, 2007, Department of Public Safety Sergeant Phillip
Breeding heard a dispatch on an attempt to locate appellant.  The caller stated
that appellant was in the area of Bowens Grocery.  Sergeant Breeding found
appellant in the alley behind the grocery store. Sergeant Breeding placed
appellant into custody.  Appellant said, “You know what I did.”

            Investigator
Hill saw appellant on November 5.  Investigator Hill testified that, at that
time, he did not see any injuries on appellant.  Investigator Estes saw
appellant soon after he was arrested.  Investigator Estes testified that he
inspected appellant for wounds and that appellant did not have any wounds.

            Viewing
all of the evidence in the light most favorable to the jury’s verdict, we
conclude that a rational trier of fact could have found the essential elements
of murder beyond a reasonable doubt. Appellant and Enriquez were with each
other at Jaguars.  Soon after they left Jaguars, Hernandez discovered Enriquez
in a pool of blood on the shoulder of the highway.  Enriquez had been stabbed
multiple times.  Appellant’s personal belongings were found in the bed of
Enriquez’s pickup.  A bloody cell phone was found in the vicinity of the
pickup.  Appellant told Christy Yarbrough that he had stabbed Enriquez.  He
also told Evans that he had stabbed somebody.  He told Traylor that he had
killed “that guy.”  The evidence was legally sufficient to support appellant’s
conviction.

            Appellant
also challenges the factual sufficiency of the evidence.  The Texas Court of
Criminal Appeals has now held in Brooks that there is “no meaningful
distinction between the Jackson v. Virginia legal-sufficiency standard
and the Clewis[2]
factual-sufficiency standard”; that the Jackson v. Virginia standard
is the “only standard that a reviewing court should apply in determining
whether the evidence is sufficient to support each element of a criminal
offense that the State is required to prove beyond a reasonable doubt”; and
that “[a]ll other cases to the contrary, including Clewis, are
overruled.”  Brooks, 2010 WL 3894613, at *1, *8, *14 (footnote added). 
Accordingly, a challenge to the factual sufficiency of the evidence is no
longer viable.  We note that appellant did not have the benefit of the opinion
in Brooks when this case was briefed.  We have already determined that
the evidence was sufficient to support appellant’s conviction under the Jackson
v. Virginia standard.  Therefore, appellant’s third issue is overruled.

Trial
Court’s Refusal to Instruct the Jury on Self-Defense

            Appellant
requested a jury instruction on self-defense.  The trial court denied the
requested instruction.  A trial court must charge the jury fully and
affirmatively on the law applicable to every issue raised by the evidence.  Tex. Code Crim. Proc. Ann. art. 36.14
(Vernon 2007).  If evidence from any source raises a defensive theory, it must
be included in the court’s charge.  Ferrel v. State, 55 S.W.3d 586, 591
(Tex. Crim. App. 2001); Taylor v. State, 856 S.W.2d 459, 470-71 (Tex.
App.—Houston [1st Dist.] 1993), aff’d, 885 S.W.2d 154 (Tex. Crim. App.
1994).  A defendant is entitled to an instruction on self-defense if the issue
is raised by the evidence regardless of whether that evidence is strong, weak,
unimpeached, or contradicted and regardless of what the trial court may think
about the credibility of the defense.  Walters v. State, 247 S.W.3d 204,
209 (Tex. Crim. App. 2007); Ferrel, 55 S.W.3d at 591.  However, if the
evidence, viewed in the light most favorable to the defendant, does not
establish self-defense, the defendant is not entitled to an instruction on the
issue.  Ferrel, 55 S.W.3d at 591.  

A
person is justified in using force against another in self-defense “when and to
the degree the actor reasonably believes the force is immediately necessary to
protect the actor against the other’s use or attempted use of unlawful force.” 
Tex. Penal Code Ann. § 9.31(a)
(Vernon Supp. 2010).  A person is justified in using deadly force against
another in self-defense “if the actor would be justified in using force against
the other [person] under Section 9.31” and “when and to the degree the actor
reasonably believes the deadly force is immediately necessary to protect the
actor against the other’s use or attempted use of unlawful deadly force.”  Id.
§ 9.32(a)(1), (a)(2)(A).  “Deadly force” is defined as “force that is
intended or known by the actor to cause, or in the manner of its use or
intended use is capable of causing, death or serious bodily injury.”  Id.
§ 9.01(3).

Appellant
used deadly force against Enriquez.  Therefore, appellant was entitled to an
instruction on self-defense only if the evidence satisfied the requirements of
Sections 9.31 and 9.32.  Preston v. State, 756 S.W.2d 22, 25 (Tex. App.—Houston
[14th Dist.] 1988, pet. ref’d).  In the absence of evidence of use or attempted
use of deadly force by the victim, the Section 9.32 defense is not available,
and the accused is not entitled to a jury instruction on self-defense.  Werner
v. State, 711 S.W.2d 639, 644 (Tex. Crim. App. 1986); Welch v. State,
908 S.W.2d 258, 264 (Tex. App.—El Paso 1995, no pet.); Preston, 756
S.W.2d at 25.

Appellant
relies on the testimony of Christy Yarbrough and Traylor in arguing that the
evidence raised the issue of self-defense.  Christy Yarbrough testified that
appellant told her he had gotten into a fight and Enriquez had hit him in the
jaw.  Traylor testified that appellant told him “the guy” had kept hitting and
fighting him and had hit him in the eye.  This testimony shows that Enriquez may
have used non-deadly force against appellant by hitting him or punching him in
the eye and jaw.  However, there was no evidence that Enriquez used or
attempted to use deadly force against appellant.  See Ogas v. State, 655
S.W.2d 322, 324 (Tex. App.—Amarillo 1983, no pet.) (A blow to the face, whether
made with an open or closed hand, did not constitute the use or attempted use
of deadly force.).  Therefore, the trial court did not err in refusing to
instruct the jury on self-defense.  Werner, 711 S.W.2d at 644; Welch,
908 S.W.2d at 264; Preston, 756 S.W.2d at 25.  Appellant’s first issue
is overruled.

The
Rule of Exclusion of Witnesses

            Appellant
argues that Garcia and Investigator Estes violated Rule 614 of the Rules of
Evidence before Garcia’s testimony relating to her identification of the knife
at the sheriff’s department and that, therefore, the trial court abused its
discretion in allowing such testimony and in admitting the knife that Garcia identified
into evidence.  Rule 614 provides for the exclusion of witnesses from the
courtroom during trial.  The purpose of the Rule is to prevent the testimony of
one witness from influencing the testimony of another.  Russell v. State,
155 S.W.3d 176, 179 (Tex. Crim. App. 2005); State v. Saylor, 319 S.W.3d
704, 709-10 (Tex. App.—Dallas 2009, pet. ref’d); Phillips v. State, 64
S.W.3d 458, 459 (Tex. App.— Houston [1st Dist.] 2001, no pet.).  Once the Rule
is invoked, witnesses are instructed by the trial court that they may not
converse with one another or with any other person about the case, except by
permission from the court.  Tex. Code Crim.
Proc. Ann. art. 36.06 (Vernon 2007); Saylor, 319 S.W.3d at 710.  Further,
the trial court must exclude witnesses from the courtroom during the testimony
of other witnesses.  Rule 614; Saylor, 319 S.W.3d at 710.  Counsel may
discuss the case with a witness who has been placed under Rule 614 as long as
the discussion occurs out of the presence of other witnesses.  Archer v.
State, 703 S.W.2d 664, 666 n.1 (Tex. Crim. App. 1986); Clayton v. State,
652 S.W.2d 950, 953 (Tex. Crim. App. 1983).

            In
this case, appellant invoked the Rule.  The trial court instructed the
potential witnesses that they were not to hear the testimony of other witnesses
or to discuss the testimony of any other witness.  The trial court also
instructed the potential witnesses that they could speak to the attorneys in
the case.

            Investigator
Estes testified before Garcia did.  During Garcia’s testimony, she testified
that appellant brought a knife, which was inside a case, into her apartment on
October 25, 2007.  Following Garcia’s testimony, the trial court recessed the
case for a lunch break.  After lunch, other witnesses testified and then the State
recalled Garcia as a witness.  Garcia testified that, during the lunch break,
she looked at a knife collection at the sheriff’s department and located a
knife that resembled the knife appellant had in her apartment on October 25,
2007.  Over appellant’s objection, the trial court admitted the knife as
demonstrative evidence.

            During
cross-examination, Garcia testified that someone at the sheriff’s office asked
her if she could pick out a similar knife.  At the bench, appellant’s counsel
stated, “I think there has been a violation of the rule of sequestration, if
someone is talking to her about picking out a knife.”  The trial court
addressed the issue outside the jury’s presence.  In response to questions from
the trial court, Garcia said that the prosecutor asked her whether she could
find a knife that was similar to the knife that she had seen on appellant. 
Garcia said that an officer took her to the sheriff’s department but that she
could not remember his name.  A prosecutor informed the trial court that
Investigator Estes took Garcia to the sheriff’s department.

The
trial court asked Garcia whether she discussed the case with Investigator Estes
on the way to the sheriff’s department and on their way back to the
courthouse.  Garcia responded, “No, just about that he had some knives that I
could look through.  And that was about it.”  Garcia also said that
Investigator Estes asked her if she could find a similar knife.  She said that
Investigator Estes put some knives on a table in his office at the sheriff’s
department and asked her, “[W]hich one do you think it would be?”  Garcia told
the trial court that “[she] pointed one out.”  The trial court asked Garcia,
“What other conversation did you have with him?”  Garcia responded, “That was
it.”  The trial court asked Garcia, “So you went to the Sheriff’s Office,
because [the prosecutor] instructed you to go over there and see if you could
find a knife that was similar to the one you had seen in [appellant’s]
possession?”  Garcia responded, “Yes.”  The trial court concluded that no
violation of the Rule occurred.

Appellant
has not shown that a violation of Rule 614 occurred.  The record contains no
evidence that Investigator Estes and Garcia conferred about Investigator
Estes’s testimony or that Investigator Estes influenced Garcia’s testimony in
any way.  In her initial testimony, Garcia testified about the knife that
appellant brought to her apartment.  She gave this testimony before she went
with Investigator Estes to the sheriff’s department.  The prosecutor instructed
Garcia to go to the sheriff’s department so that she could attempt to locate a
similar knife that could be offered as demonstrative evidence.  Garcia
testified that she located a similar knife.  This testimony did not corroborate
any of Investigator Estes’s testimony.  We conclude that the trial court did
not err in concluding that no violation of Rule 614 occurred.  Additionally, assuming
that a violation of Rule 614 occurred, we conclude that appellant was not
harmed by the violation because Garcia’s testimony about her identification of
a similar knife did not overlap with Investigator Estes’s testimony.  Rodriguez
v. State, 772 S.W.2d 167, 169 (Tex. App.—Houston [14th Dist.] 1989, pet.
ref’d) (The appellant was not harmed where the witnesses did not testify on a
common subject.).  Appellant’s second issue is overruled.

This
Court’s Ruling

            The judgment of the
trial court is affirmed.

 

 

                                                                                    TERRY
McCALL

                                                                                    JUSTICE

 

December 23,
2010

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]See Tex. R. Evid. 614.





[2]Clewis
v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996).