**The STATE of Texas, Appellant,**

v.

**Carol Collins SAYLOR, Appellee.**

**No. 05–08–00530–CR.**

Court of Appeals of Texas,
Dallas.

April 28, 2009.

Discretionary Review Refused
Sept. 23, 2009.

---

Michael R. Casillas, Asst. Dist. Atty.–Chief Prosecutor, Dallas, for Appellant.

Mike McCollum, Supervising Atty.–Crim. Justice Clinic, Jeff P. Buchwald, Dallas, for Appellee.

Before Justices FRANCIS, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.[1]

Carol Collins Saylor was convicted of driving while intoxicated and sentenced to nine days in the county jail. In one issue, the State claims the trial court abused its discretion by granting appellee's motion for new trial. We vacate the trial court's order granting the motion for new trial and reinstate the trial court's judgment.

### BACKGROUND

Appellee was charged with, and pleaded not guilty to, misdemeanor driving while intoxicated (DWI), which was alleged to have occurred on May 5, 2006. At the start of trial, the trial court agreed with the State's request to invoke Rule of Evidence 614, which is commonly known as "the Rule." The trial court explained the Rule as follows: "The Rule's been invoked, and what that means is you cannot sit in the courtroom while another witness is testifying. You may not speak about this case with each other or any other witness. You may talk to the attorneys, but that is all." Shortly before recessing at the end of the first day of trial, the court informed additional witnesses that the Rule had been invoked and told those witnesses, "What that means is that you may not talk about this case with any other witness in this case. And you may not be in the courtroom while another witness is testifying. You may talk with the attorneys but that is all."

Appellee was convicted and sentenced to nine days in the county jail. The judgment was signed on February 1, 2008. Appellee's motion for new trial, which was timely filed on February 19, 2008, alleged she was entitled to a new trial "in the interest of justice" because the State had violated the Rule, that is, "a fact witness was instructed by the State's attorney as to what a previously-called witness from the State had testified to regarding central fact issues."

During the hearing on appellee's motion for new trial, which took place on April 10, 2008, the trial court heard the testimony of the lead prosecutor on the case, the chief prosecutor of the misdemeanor division of the Dallas County District Attorney's office, and an assistant public defender.[2] Of these witnesses, only the prosecutor and the public defender could provide any information regarding the alleged violation of the Rule.

The public defender testified that, at some point during the trial of this case, she was in a "work room" waiting to talk to another prosecutor when the lead prosecutor in this case entered the work room and started talking to the toxicologist, a State's witness, in the presence of yet another State's witness, a nurse. The public defender started to listen more closely to the conversation, which she described as follows:

> At that time I began to listen, you know, more closely, because it struck me as odd that she was saying that. And at that point she began to talk about—said something about a lock—she was talking about a refrigerator saying somebody

1. Justice Amos L. Mazzant authored the original March 27, 2009 unpublished opinion in this case. However, due to his appointment as a federal magistrate, Justice Mazzant did not participate in the panel's decision to grant the State's motion to publish. Justice Francis, as the senior member of the panel, has signed the published version of the opinion.

2. The public defender was not the attorney of record. Another attorney represented appellee during the DWI trial.

said and I don't recall—I don't know what witness she was talking about because I hadn't seen any of the trial.

She said somebody, you know, said something about the lock not being—the refrigerator not being locked and whether or not it was locked. She said she thought that was going to be an issue, and asked the witness what the witness was going to say about that. And then she also said that someone else had testified that the door to the refrigerator may or may not have been opened and the effects of that may or may not have [sic] on a blood sample.

And what really caught my attention was then she looked right at me and said, oh, I really can't be telling you that, what are you going to say.

At that point, the public defender's supervisor, who was also present, said, "[D]id she just say what I thought she said." The public defender replied, "I think so."

The public defender never heard the prosecutor mention the name of the witness who had testified about the refrigerator-related issues. Her recollection was that the prosecutor mentioned a witness had testified about something but did not mention the witness's name. Regarding the prosecutor's initial comments to the toxicologist, the public defender summarized what she heard by saying, "Actually, all I heard was testified [sic] that the lock, blah, blah, blah. So I don't—I never heard—I had no idea who she was speaking about." The public defender also said, "To be honest, the first time when she [the prosecutor] was speaking about the lock, she said—all I heard was testified [sic] that the lock X–Y–Z. The second time I heard her say witness [sic] testified about the refrigerator being open, not opened, contamination and whatnot." The public defender assumed the prosecutor was asking the witness, in effect, "I told you what

these other people's testimony is, what's yours going to be?" When asked if it would have been proper for the prosecutor to ask the toxicologist about whether the blood sample could have been compromised by facts such as those raised in appellee's cross-examination questions, the public defender replied, "Well, certainly it would be okay for her to ask if it would compromise it. But I don't think it's okay to say it in front of other witnesses within earshot, and tell that witness what other witnesses have testified to."

The public defender said she did not immediately report the incident in the work room because at that point she "didn't really know what to do." She reasoned that if the defense won the trial "the whole thing would be moot," so she decided to wait until the end of trial. When she found out appellee had been convicted, she spoke with some other attorneys in her office and decided to inform the trial court. The public defender said she believed the prosecutor knew that she had reported the alleged Rule violation because, shortly after speaking to the trial court, the prosecutor treated her differently and "wouldn't really deal with me, wouldn't look at me, [and] wouldn't engage in a normal work room relationship with me." Since that time, their working relationship has deteriorated.

The prosecutor testified her understanding of the Rule was that each witness could talk only with the attorneys once the Rule had been invoked. She explained that the witness in question, the toxicologist, was an expert witness who was called to discuss the blood test result and "the scientific theory behind it." He was the last witness who testified for the State. When asked whether she had "ever talked to a witness about what a prior witness had testified to," the prosecutor said she "may have talked about what a prior witness

said on cross-examination in the form of a question to find out about an issue that came up on cross." That issue had "to do with the validity of the blood sample based on the way it was maintained by the police department." The prosecutor further explained that the issue "came up through cross-examination" and it concerned "yeast and the temperature of the refrigerator, if it was locked, who had access to it, and things like that." She also stated, "So I know that I then would have talked to the forensic toxicologist about whether that would invalidate that blood test result."

The prosecutor also testified she did not remember telling the toxicologist anything to the effect of, "I shouldn't have said that." She suggested the hearing on the motion for new trial was the first time she had ever heard the allegation that she told the toxicologist, "I shouldn't have said that." The prosecutor also noted appellee's case was the first "blood test case" she had tried and that it constituted "a totally different area than even a breath test or a DWI refusal." She explained that since the defense raised questions through its cross-examination of the State's witnesses concerning the validity of appellee's blood sample, the prosecutor wanted to review this subject with the toxicologist "before proceeding on with the trial." When asked whether, as a prosecutor, she would want to know if a blood test had been "compromised in any way," the prosecutor replied, "Absolutely." Additionally, she suggested that determining whether the blood sample had been compromised was consistent with her ethical duties as a prosecutor under *Brady v. Maryland*.[3]

According to the chief prosecutor, approximately a week after the trial of this case had concluded, the prosecutor came to her office and told her that the trial

judge had informed her about an accusation "[t]hat the Rule had been violated." The prosecutor did not know who was making the allegation against her or what conduct allegedly violated the Rule, and the prosecutor could not tell the chief prosecutor whether she had, in fact, violated the Rule. The chief prosecutor recalled she immediately asked the prosecutor whether she violated the Rule because the district attorney's office would have agreed to the motion for new trial if there was a violation of the Rule. But since the prosecutor "was not clear" about the allegation or who made it, the chief prosecutor "could not make the decision at that time." The chief prosecutor agreed that, once the Rule is invoked, it is a violation for a lawyer, in the presence of other witnesses in the case, to inform a witness, who has not been called to testify, about a prior witness's testimony.

Following the presentation of the evidence and closing arguments, the trial court granted the motion for new trial and inquired about setting a new trial date. The court denied appellee's request to set aside the verdict and enter a judgment of acquittal. The court ruled that, on retrial, the toxicologist would not be allowed to testify but declined to suppress the blood evidence, noting, "If they can come up with another way to present that, they're free to do that."

## DISCUSSION

■ In its only issue, the State claims the trial court abused its discretion by granting appellee's motion for new trial because appellee failed to show her trial was not conducted in accordance with the law. Appellee argues the evidence at the motion for new trial hearing showed that the prosecutor knowingly violated the Rule

---

**3.** 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215    (1963).

by advising one key witness about a prior witness's testimony in front of another State's witness.

■ "A trial judge has discretion to grant or deny a motion for new trial 'in the interest of justice,' but 'justice' means in accordance with the law." *State v. Herndon*, 215 S.W.3d 901, 906 (Tex.Crim.App. 2007). The decision to grant or deny the motion for new trial is reviewed for an abuse of discretion. *Id.* The court of criminal appeals has noted, however, that a trial court's discretion to grant a new trial in the interest of justice is not "unbounded or unfettered." *Id.* at 907. The court wrote:

> A trial judge does not have authority to grant a new trial unless the first proceeding was not in accordance with the law. He cannot grant a new trial on mere sympathy, an inarticulate hunch, or simply because he personally believes that the defendant is innocent or "received a raw deal." . . . Although not all of the grounds for which a trial court may grant a motion for new trial need be listed in statute or rule, the trial court does not have discretion to grant a new trial unless the defendant shows that he is entitled to one under the law. To grant a new trial for a non-legal or legally invalid reason is an abuse of discretion.

*Id.*

■ The test for abuse of discretion is not whether the appellate court believes "the facts present an appropriate case for the trial court's action; rather, it is a question of whether the trial court acted without reference to any guiding rules or principles." *Id.* at 908. The "mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse." *Id.* The court also noted:

While a trial court has wide discretion in ruling on a motion for new trial which sets out a valid legal claim, it should exercise that discretion by balancing a defendant's "interest of justice" claim against both the interests of the public in finality and the harmless-error standards set out in Rule 44.2. Trial courts should not grant a new trial if the defendant's substantial rights were not affected. Otherwise, the phrase "interest of justice" would have no substantive legal content, but constitute a mere platitude covering a multitude of unreviewable rulings.

*Id.*

■ As a general rule, a trial court will not abuse its discretion by granting a motion for new trial if the defendant (1) articulated a valid legal claim in his motion, (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim, and (3) showed prejudice to her substantial rights under the rules of appellate procedure. *Id.* at 909; *see* Tex.R.App. P. 44.2.

> The defendant need not establish reversible error as a matter of law before the trial court may exercise its discretion in granting a motion for new trial. On the other hand, trial courts do not have the discretion to grant a new trial unless the defendant demonstrates that his first trial was seriously flawed and that the flaws adversely affected his substantial rights to a fair trial.

*Herndon*, 215 S.W.3d at 909. Appellee had the burden of proof at the hearing on her motion for new trial. *See Patrick v. State*, 906 S.W.2d 481, 498 (Tex.Crim.App. 1995).

■ Rule 614 provides for the exclusion of witnesses from the courtroom during trial. Tex.R. Evid. 614. The purpose of the Rule is to prevent the testimony of

one witness from influencing the testimony of another. *Russell v. State*, 155 S.W.3d 176, 179 (Tex.Crim.App.2005); *Phillips v. State*, 64 S.W.3d 458, 459 (Tex.App.-Houston [1st Dist.] 2001, no. pet.). Once the Rule is invoked, witnesses are instructed by the court that they may not converse with one another or with any other person about the case, except by permission from the court. TEX.CODE CRIM. PROC. ANN. art. 36.06 (Vernon 2007); *Russell*, 155 S.W.3d at 179. Further, the trial court must exclude witnesses from the courtroom during the testimony of other witnesses. TEX.R. EVID. 614.

> A violation of the Rule occurs when a nonexempt prospective witness remains in the courtroom during the testimony of another witness, or when a nonexempt prospective witness learns about another's trial testimony through discussions with persons other than the attorneys in the case or by reading reports or comments about the testimony.

*Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 117 (Tex.1999). If a witness violates the Rule, the trial court has discretion to allow testimony from the witness. *Bell v. State*, 938 S.W.2d 35, 50 (Tex.Crim.App.1996). On appeal, the trial court's decision to admit testimony will not be disturbed absent an abuse of that discretion. *Id.*

Applying these principles, the trial court could have reasonably concluded, based on the testimony at the motion for new trial hearing, that the prosecutor made a comment to the effect that she should not have told the toxicologist "something." Yet it is impossible to determine whether the prosecutor actually violated the Rule without knowing what she said to the toxicologist. The prosecutor and the public defender were the only witnesses who could testify concerning the alleged violation of the Rule, but neither of them could recall the events of that day with any precision. They agreed that, at some point during the trial of this case, the public defender was in the work room waiting to talk to another prosecutor regarding an unrelated matter when she saw the prosecutor enter the room and speak with the toxicologist, a State's witness, concerning whether appellee's blood sample could have been compromised in some way by faulty refrigeration. But the record does not establish the substantive content of the conversation between the prosecutor and the toxicologist. Additionally, appellee has not shown that the prosecutor disclosed the name of the witness who testified about the refrigeration-related issues or that she disclosed the names of any witnesses. Appellee also failed to establish what, if anything, the nurse-witness who was present in the work room actually heard of the conversation between the prosecutor and the toxicologist. Although she testified at trial, the nurse was not called to testify at the motion for new trial hearing. Finally, it is undisputed that the nurse testified before the events in question and was not recalled to the stand, so her trial testimony could hardly have been influenced by the conversation between the prosecutor and the toxicologist, regardless of its content. We also note the trial court's repeated explanations of the Rule expressly permitted witnesses to talk with the attorneys, and the Rule was not violated simply because the prosecutor spoke to the toxicologist. Accordingly, appellee failed to demonstrate the Rule was violated or that her trial was not in accordance with the law.[4]

---

4. Because appellee failed to show the Rule was violated, we express no opinion on the State's alternative arguments that, assuming the prosecutor violated the Rule, (1) she had an ethical obligation under *Brady v. Maryland* to discuss the previous testimony with the toxicologist, and (2) review of the trial record shows that disclosure of the prior witness's

We therefore conclude the trial court abused its discretion by granting appellee's motion for new trial. We sustain the State's issue and vacate the trial court's order granting a new trial. We reinstate the trial court's judgment of February 1, 2008.

testimony could not have influenced the toxicologist's testimony.