**Opinion issued December 20, 2012**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00500-CR

———————————

**THE STATE OF TEXAS, Appellant**

**V.**

**JEREMY THOMAS, Appellee**

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Case No. 1284896**

---

## O P I N I O N

A jury convicted appellee, Jeremy Thomas, of the first-degree felony offense

of murder, and the trial court assessed his punishment at confinement for life.[1]

---

[1]    *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2011).

Thomas moved for a new trial "in the interest of justice" because the jury did not hear exculpatory testimony from an alleged eyewitness. The trial court granted his motion for new trial. In two issues, the State contends that (1) the trial court erred in granting a new trial because there was no legal basis for a new trial and Thomas failed to establish that his trial was not held in accordance with the law, and (2) if we determine that the trial court erroneously granted a new trial on guilt-innocence, Thomas is not entitled to a new trial solely on punishment.

We reverse and remand.

## Background

On August 3, 2006, Houston Police Department ("HPD") officers responded to a 9-1-1 call at the Court Glen Apartments in southwest Houston. Officers discovered the body of the complainant, Vernon Keith Moses, lying on his side in the doorway of his apartment, Apartment 1601. Moses had three gunshot wounds to his back and the back of his head. Officers recovered four .40 caliber fired cartridge casings from the scene.

At the time of the shooting, Brandon Lusk lived in Apartment 2205, which was located further inside the apartment complex from Building 16. Lusk arrived home around 11:10 p.m. and walked past Moses' apartment to get to his own. He saw Moses, whom he did not know very well, standing outside with an unidentified man. Lusk testified that Moses was pacing and appeared agitated.

2

Lusk briefly engaged Moses in conversation, and he then continued walking to his apartment. Three or four minutes after Lusk arrived at his apartment, he heard three gunshots. Lusk turned the lights off in his apartment, opened his front door slightly, and looked outside. Lusk saw a young man walking quickly past his apartment. This man was holding his shorts up with his right hand and was holding a pistol in his left hand. Lusk did not see this man's face, and he could not identify this man. Lusk waited about five to ten minutes before leaving his apartment to attempt to aid Moses.

Maria Coronado lived in Apartment 2306, which was next door to Thomas's apartment, 2308, and was located in the building perpendicular to Building 16. On the night of the shooting, Coronado heard arguing coming from outside and looked out her window to investigate. Coronado could clearly see Thomas and one of his friends arguing with Moses at Moses' apartment. After two or three minutes, Thomas and his friend, whom Coronado did not identify, walked upstairs to Thomas's apartment. Coronado saw them go "right back downstairs," and she then heard four or five gunshots. Coronado was still looking out of her window when she heard the gunshots, but she did not see who fired the shots. She saw Thomas and his friend run away after the gunshots, but she could not remember the direction in which they ran.

3

Trancquena Johnson testified that she was at the Court Glen Apartments on the night of the shooting to visit her friend Ochelata Reliford and his roommate, who lived in Apartment 2311. Johnson recognized Thomas as one of the men she had seen at Apartment 2308 on previous occasions, but she did not know him by name. At one point in the evening, Johnson saw Thomas, a man later identified as Carnell Meredith, a woman, and Moses arguing in front of Moses' apartment. Johnson went back inside her friends' apartment, but she then decided to go home about five minutes later. As she walked out to her car with her daughter, her godson, and Reliford, Johnson had a "clear view" of Moses' apartment, and she saw the group still arguing. Johnson then saw Thomas raise a gun and start firing at Moses. When she heard the gunshots, Johnson ran to get her daughter and godson out of her car. As she was doing this, Thomas ran past her, and she saw what appeared to be a gun in his hand. Johnson testified that she got a "good look" at Thomas as he ran past her and that she recognized him from having seen him around the apartment complex on previous occasions.

Reliford was at home throughout the day on August 3, 2006. He first saw Thomas, whom he called "Red," hanging out with some other men that morning. He later saw Thomas "having a confrontation" with his girlfriend, Ciarra Vallery, who also lived in Apartment 2308. He also periodically saw Moses, who was arguing with Thomas off and on that day. Later that evening, when Johnson was

4

leaving, Reliford saw Ciarra sitting on the steps of her apartment, crying, and telling Thomas, "Don't do this." According to Reliford, Thomas then walked downstairs and over to Moses' apartment. Thomas knocked on Moses' door, started to open the door himself, and shot Moses in the head. Thomas and three or four other men then ran past Reliford and Johnson. Reliford did not lose sight of Thomas after the gunshots, and he saw Thomas run by with a gun in his hand.

Ciarra Vallery, who testified on Thomas's behalf, acknowledged that she had a "disagreement" with Thomas on the day of the shooting, but she also testified that she spent the night at a friend's apartment and therefore was not at home at the time of the shooting. Ciarra stated that her sister, Shelita Vallery, was at Apartment 2308 on the night of the shooting. She said that, at one point that night, she received a phone call from Shelita, who was very excited and upset, telling her about what happened. Ciarra stayed at her friend's house, but she spoke with Thomas, who told her that he was at home and was "all right." Ciarra spoke with Shelita "probably once" about the incident, and she testified that Shelita told her that she "didn't see too much of it."

During a bench conference after Ciarra's testimony, the prosecutor asked defense counsel, "Are you going to put on [Shelita]?" Defense counsel responded, "No." In her subsequent questioning of HPD Detective J. Brooks, the prosecutor asked Brooks whether, during his interrogation of Thomas, he let Thomas read any

5

written statements before he began the recorded interview. Detective Brooks responded that he let Thomas read Shelita's statement.[2]

The jury convicted Thomas of murder, and the trial court assessed punishment at confinement for life.

Thomas then moved for a new trial. In this motion, Thomas argued that he "obtained compelling evidence that was not presented at trial," namely, the affidavit of Shelita Vallery, in which she averred that she witnessed Carnell Meredith shoot Moses. She averred that Thomas had his back to Moses and was walking up the stairs to his apartment when Meredith shot Moses. This sworn testimony corresponds with the contents of Shelita's written statement. Thomas also argued in his motion for new trial that Meredith had pleaded guilty to Moses' murder and had received a ten-year sentence.[3] Thomas argued that the State's case depended on "reluctant witnesses who gave muddied statements," and he argued that both the guilty verdict and the punishment verdict were "against the interest of justice." He further argued that his trial was seriously flawed and that his substantial rights were affected "because compelling evidence that shows his actual innocence and mitigates punishment was not admitted at trial." He did not

---

[2]   Thomas's appellate counsel acknowledges that trial counsel was aware of Shelita's statement, which was exculpatory, several months before appellee's trial.

[3]   Evidence to this effect was presented to the jury. Detective Brooks testified that Meredith was charged with Moses' murder, and he acknowledged that Meredith had ultimately pleaded guilty to this charge.

argue either ineffective assistance of counsel or newly-discovered evidence as grounds for granting a new trial.

> During the motion for new trial hearing, Thomas argued:

> [The motion for new trial is] not based on newly discovered evidence. It's not based on ineffective assistance of counsel. We have a witness that was not presented at trial that was an eyewitness to the murder that [she] saw someone else do; and in the interest of justice, we ask that the Court either order a new trial or [a] new punishment hearing in light of this woman's testimony.

Throughout the hearing, Thomas's appellate counsel repeatedly stated that she was not arguing that his trial counsel was ineffective for failing to call Shelita Vallery to testify. Thomas's trial counsel testified at the hearing and agreed with the State that the prosecutor had provided a copy of Shelita's written statement to Thomas prior to trial. He also testified that he had contacted Shelita and that she "was present to be a witness" during the trial. During this hearing, Thomas repeatedly objected and asserted attorney-client privilege whenever the prosecutor attempted to ask trial counsel whether he had a strategy for not calling Shelita to testify.

> In ruling on the motion, the trial court stated:

> First, I do believe that testimony of [Shelita] could have made a difference in the outcome of the trial during the guilt/innocence phase and if not during the guilt/innocence phase, certainly during the punishment phase. I'm the one that assessed punishment. I was not privy to this information.

> Secondly, immediately upon sentencing and leaving the bench, I seriously questioned whether or not and still believe that my punishment in this case was excessive given the facts and

7

circumstances or given the evidence that I heard from the witness stand and the questions that remain.

I understand the jury returned a verdict of guilty of murder against this defendant. However, if I'm to assess punishment, I must consider all facts and circumstances. All facts and circumstances and the evidence as I saw it.

I believe there was a question as to the actual gunman. I believe there could have been another gunman, and I believe that the sentence I assessed was excessive.

The court also stated that a "major factor" in its decision was that it "was not aware of this witness, [her] ability to contradict, directly contradict and [who] was probably in a better position to see what actually occurred . . . ." The trial court ultimately granted Thomas's motion for new trial, and the State appealed this order. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(3) (Vernon Supp. 2012) (providing State opportunity to appeal order granting new trial in criminal case).

**Motion for New Trial**

In its first issue, the State contends that the trial court erroneously granted Thomas's motion for new trial in the interest of justice because Thomas did not establish that his trial was not conducted in accordance with the law or that a valid legal basis existed for granting a new trial.

*A.     Standard of Review*

The Court of Criminal Appeals has held that a trial court has the authority to grant a new trial "in the interest of justice" and that a court's ruling on a motion for new trial is reviewed only for an abuse of discretion. *State v. Herndon*, 215

8

S.W.3d 901, 906 (Tex. Crim. App. 2007). The test for abuse of discretion is not whether, in the opinion of the appellate court, the facts present an appropriate case for the trial court's action, but rather, "it is a question of whether the trial court acted without reference to any guiding rules or principles." *Id.* at 907 (quoting *Howell v. State*, 175 S.W.3d 786, 796 (Tex. Crim. App. 2005)); *State v. Hart*, 342 S.W.3d 659, 664 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). The mere fact that the trial court may decide a matter within its discretionary authority differently from an appellate court does not demonstrate an abuse of discretion. *Herndon*, 215 S.W.3d at 907–08 (quoting *Howell*, 175 S.W.3d at 792); *Hart*, 342 S.W.3d at 664. We view the evidence in the light most favorable to the trial court's ruling, defer to the court's credibility determinations, and presume all reasonable fact findings that could have been made in support of the ruling. *Hart*, 342 S.W.3d at 664 (citing *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004)). A trial court is given wide latitude in deciding whether to grant or deny a motion for new trial. *State v. Boyd*, 202 S.W.3d 393, 401 (Tex. App.—Dallas 2006, pet. ref'd). A trial court's ruling granting a motion for new trial is presumed to be correct, and the burden rests on the State to establish the contrary. *Id.* at 401–02.

Nevertheless, the trial court's discretion to grant a motion for new trial "in the interest of justice" is not "unbounded or unfettered." *Herndon*, 215 S.W.3d at

9

907. Instead, "justice" means "in accordance with the law." *Id.*; *Hart*, 342 S.W.3d at 663. The trial court cannot grant a new trial based on mere sympathy, an inarticulate hunch, "or simply because he personally believes that the defendant is innocent or 'received a raw deal.'" *Herndon*, 215 S.W.3d at 907; *Hart*, 342 S.W.3d at 663. Texas Rule of Appellate Procedure 21.3 lists the legal grounds for which the trial court must grant a new trial, but that list "is illustrative, not exclusive." *Herndon*, 215 S.W.3d at 907; TEX. R. APP. P. 21.3. Although the trial court may grant a motion for new trial on a basis not listed in a statute or in a rule, the court does not have discretion to grant a new trial "unless the defendant shows that he is entitled to one under the law." *Herndon*, 215 S.W.3d at 907 (citing *State v. Hight*, 907 S.W.2d 845, 847 (Tex. Crim. App. 1995)); *Hart*, 342 S.W.3d at 664. A trial court abuses its discretion if it grants a new trial for non-legal or a legally invalid reason. *See Herndon*, 215 S.W.3d at 907; *Hart*, 342 S.W.3d at 664.

Although a trial court has "wide discretion" in ruling on a motion for new trial that sets out a valid legal claim, the court should exercise its discretion by balancing the defendant's "interest of justice" claim against both the interest of the public in finality and the harmless-error standards of Texas Rule of Appellate Procedure 44.2. *See Herndon*, 215 S.W.3d at 908; *Hart*, 342 S.W.3d at 664; *see also* TEX. R. APP. P. 44.2(a)–(b) (providing that court must reverse on basis of constitutional error "unless the court determines beyond a reasonable doubt that the

10

error did not contribute to the conviction or punishment" and providing that appellate court must disregard all other errors that do not "affect substantial rights"). The trial court should not grant a new trial if the defendant's substantial rights were not affected; otherwise, "the phrase 'interest of justice' would have no substantive legal content, but [would] constitute a mere platitude covering a multitude of unreviewable rulings." *Herndon*, 215 S.W.3d at 908.

The Court of Criminal Appeals expressly stated in *Herndon* that it was not setting out a bright-line rule concerning appellate review of a trial court's discretion in granting a new trial in the interest of justice, but it concluded that a trial court "would not generally abuse its discretion in granting a motion for new trial" if the defendant: (1) articulated a valid legal claim in his motion for new trial; (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the standards of Rule 44.2. *Id.* at 909; *Hart*, 342 S.W.3d at 664. The defendant is not required to establish reversible error as a matter of law before the trial court may exercise its discretion to grant a new trial. *Herndon*, 215 S.W.3d at 909. Trial courts do not, however, have the discretion to grant a new trial unless the defendant demonstrates that his first trial was seriously flawed and that the flaws adversely affected his substantial rights to a fair trial. *Id.*; *Hart*, 342 S.W.3d at 664–65.

11

## B.  Basis for Granting New Trial "In the Interest of Justice"

Under *Herndon*, the trial court generally does not abuse its discretion in granting a new trial in the interest of justice if the defendant articulates a "valid legal claim" in his motion for new trial.  215 S.W.3d at 909.  Thomas contends that he was "deprived of direct exculpatory evidence that would have worked to show his innocence," and that this is a "valid legal error."  The State argues that Thomas has shown no legal error in this case because trial counsel was aware of Shelita Vallery's statement months before trial and affirmatively stated on the record at the trial that he would not be calling her as a witness, even though she was present and available to testify, and appellate counsel repeatedly stated at the motion for new trial hearing that she was not raising an ineffective assistance claim as a result of trial counsel's failure to call Shelita.  We agree with the State and conclude that Thomas failed to articulate a valid legal claim for granting his motion for new trial.

It is undisputed that defense counsel was aware of Shelita's written statement to police several months before the trial.  Defense counsel himself testified at the motion for new trial hearing that he knew of this statement and that, during the course of preparing for trial, he contacted Shelita to discuss her statement.  Defense counsel also acknowledged that Shelita was present at trial and was available to testify.  *Cf. State v. Gonzalez*, 855 S.W.2d 692, 695 (Tex. Crim. App. 1993) (affirming trial court's decision to grant new trial in interest of justice

12

when witness was not available to testify at sentencing hearing, but asked trial court to grant new trial so his testimony in favor of defendant could be considered).

Ciarra Vallery, Thomas's girlfriend and Shelita's sister, testified on Thomas's behalf that she was not at home during the evening of the shooting and that she received a phone call from Shelita, who was at the apartment and who seemed very excited and upset, during which Shelita informed Ciarra of the shooting. However, during a bench conference shortly after Ciarra testified, the prosecutor asked defense counsel, "Are you going to put on [Shelita]?" Defense counsel explicitly responded, "No." Thus, defense counsel made a conscious choice to not call Shelita as a witness, documented on the record at trial, despite the facts that Shelita was present and available to testify, that counsel knew that she had previously given an exculpatory statement to police, and that Ciarra's testimony implied that Shelita was an eyewitness who might have relevant information about the shooting.

In his motion for new trial and at the motion for new trial hearing, Thomas argued that he "has obtained compelling evidence that was not presented at trial" and that his trial was "seriously flawed" because "compelling evidence that shows his actual innocence and mitigates punishment was not admitted at trial." Appellate counsel repeatedly stated, however, that she was not arguing that trial

13

counsel was ineffective for failing to call Shelita to testify.[4]   Thomas thus contended that it was error for defense counsel not to call Shelita to testify and that this error supported the granting of a new trial in the interest of justice, but he simultaneously refused to pursue the avenue that could potentially provide relief for this failure:  an ineffective assistance claim.

Although the Court of Criminal Appeals recognized in *Herndon* that the defendant need not establish reversible error as a matter of law to be entitled to a new trial in the interest of justice, it held that, for the trial court not to abuse its discretion in granting a new trial on this basis, the defendant did need to articulate a "valid legal claim."  215 S.W.3d at 909.  Thomas thus had to show that some specific error occurred during the trial, regardless of whether that error rose to the level of reversible error pursuant to Rule 44.2, justifying a new trial.  We conclude that, under the facts of this case—in which defense counsel acknowledged that he was aware of Shelita Vallery's written exculpatory statement several months before trial; Shelita was present and available to testify at trial; counsel affirmatively stated on the record at the trial that he was not going to call Shelita as a witness; and appellate counsel refused to raise an ineffective assistance claim based on this failure—Thomas did not demonstrate a valid legal reason for

---

[4]    Indeed, appellate counsel stated:  "If we were saying, Judge, you know, the lawyer screwed up, then you would need to hear a strategic reason from him, but we're not saying that."

14

granting a new trial "in the interest of justice." *See id.* at 907 ("To grant a new trial for a non-legal or legally invalid reason is an abuse of discretion."); *State v. Saylor*, 319 S.W.3d 704, 710–11 (Tex. App.—Dallas 2009, pet. ref'd) ("Accordingly, appellee failed to demonstrate the Rule was violated or that her trial was not in accordance with the law. We therefore conclude the trial court abused its discretion by granting appellee's motion for new trial.").

Thomas cites the Fourteenth Court of Appeals' decision in *State v. Moreno*, 297 S.W.3d 512 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd), for the proposition that defense counsel's failure to call Shelita Vallery justifies the granting of a new trial in the interest of justice. In *Moreno*, an aggravated sexual assault case, the credibility of the complainant, the defendant's half-sister, was a major issue. Twelve to fourteen days before trial, the State informed defense counsel via fax that the complainant's records from a mental-health treatment center were available with the clerk of the court for inspection and copying. *Id.* at 519. These records, which implicated the complainant's credibility, were not admitted until the punishment phase of the trial. *Id.* at 518. Moreno argued that a new trial was required in the interest of justice because "if the counseling records had been admitted during the guilt-innocence phase of trial, the evidence would have been legally and factually insufficient to support a conviction." *Id.* at 519. The trial court granted the motion, stating, "The [jurors] obviously, as I told you

15

back there, were telling us that if they had known at the [guilt-innocence] phase what they know now, they would have found him not guilty." *Id.* Our sister court rejected the State's contention that these records would not have been admissible at the guilt-innocence phase of the trial. *Id.* at 523–24. The court noted that the records "raise the issue of the complainant's credibility, which the jury was entitled to hear at guilt-innocence." *Id.* at 525. The court ultimately concluded that Moreno's trial was seriously flawed and his substantial rights were affected "because evidence that directly questioned the credibility of the complaining witness was not admitted during guilt-innocence." *Id.*

Unlike this case, in which defense counsel acknowledged that he was aware of Shelita's exculpatory written statement but still affirmatively stated that he would not be calling her as a witness for Thomas, the Fourteenth Court's opinion in *Moreno* provides no indication of whether defense counsel deliberately chose not to introduce the complainant's mental health records until the punishment phase. *See id.* at 517 ("At the conclusion of the complainant's testimony [at the sentencing hearing], the State introduced a packet of documents, which contained the complainant's counseling records from the Devereux Texas Treatment Network."). In this case, it is clear from the records of both the trial and the motion for new trial hearing that defense counsel was aware of Shelita's exculpatory statement but consciously decided not to call her as a witness.

16

Additionally, Thomas's appellate counsel repeatedly objected and asserted attorney-client privilege when the State asked Thomas's trial counsel at the motion for new trial hearing whether he had a strategic reason for not calling Shelita as a witness, thus preventing the development of this point for the record. We therefore conclude that *Moreno* is distinguishable.

We hold that because defense counsel was undisputedly aware of the exculpatory evidence before trial but consciously decided, on the record, not to call the witness at trial, the trial court erroneously granted Thomas's motion for new trial in the interest of justice.

Because we hold that defense counsel's failure to call Shelita Vallery as a witness does not justify a new trial on guilt-innocence, we likewise hold that this failure does not justify a new trial solely on punishment. Moreover, to the extent Thomas argues that the trial court's punishment decision was disproportionate because Carnell Meredith had pleaded guilty to Moses's murder and received a ten-year sentence, the trial court affirmatively stated at the new trial hearing that he was aware of this sentence when he assessed punishment in this case. Thomas has never presented any argument or authorities that receiving a life sentence—which is within the permissible statutory range for murder—is grossly disproportionate when the State presented evidence that he was the principal actor who shot Moses. *See Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.)

(holding that, generally, punishment assessed within statutory limits for particular offense is not excessive, cruel, or unusual, unless sentence is "grossly disproportionate" to offense); *see also Arriaga v. State*, 335 S.W.3d 331, 335 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (holding that, in analyzing whether sentence is grossly disproportionate, courts consider (1) gravity of offense and harshness of penalty; (2) sentences imposed on other criminals in same jurisdiction; and (3) sentences imposed for commission of same offense in other jurisdictions).

Furthermore, to be entitled to a new trial on punishment, Thomas must identify a "specific, identifiable, and quantifiable" error made by the trial court in calculating his punishment. *See State v. Stewart*, 282 S.W.3d 729, 738 (Tex. App.—Austin 2009, no pet.) (holding that trial court did not abuse its discretion in granting new trial on punishment in interest of justice when record reflected that trial court relied upon error in pre-sentence investigation report in calculating punishment and noting that it was not holding that "a trial judge has the discretion to grant a defendant a new trial merely because the judge has had second thoughts about the punishment he assessed"). Thomas failed to do so. As the Court of Criminal Appeals held in *Herndon*, a trial court abuses its discretion if the judge grants a new trial on "mere sympathy, an inarticulate hunch, or simply because he personally believes that the defendant is innocent or 'received a raw deal.'" 215

18

S.W.3d at 907; *Stewart*, 282 S.W.3d at 738 ("The record before us shows that the trial judge did not grant Stewart a new trial out of mere sympathy or in the mere belief that Stewart 'received a raw deal.'").

We sustain the State's first issue.

## Conclusion

We reverse the order of the trial court granting a new trial in favor of Thomas, and we remand with instructions to reinstate the judgment of conviction and the sentence.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Publish.   TEX. R. APP. P. 47.2(b).