

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00004-CR

Nelson Adjimiro **COLLAZO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2008CR0917
Honorable Mary D. Roman, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Karen Angelini, Justice
Sandee Bryan Marion, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  June 26, 2013

AFFIRMED

Nelson Adjimiro Collazo was convicted by a jury of aggravated assault with a deadly weapon.  On appeal, Collazo contends: (1) trial counsel's failure to request a jury instruction on self-defense constituted ineffective assistance of counsel; (2) the evidence is legally insufficient to support the conviction; (3) trial counsel was erroneously prevented from cross-examining a witness regarding his immigration status; (4) the trial court abused its discretion in denying a mistrial after a witness testified in violation of Rule 614; and (5) the trial court erroneously allowed

the State to elicit expert testimony from an unqualified witness. We overrule Collazo's contentions and affirm the trial court's judgment.

## BACKGROUND

The testimony at trial raised two versions of the events that left the complainant, Raquel Reyes, seriously injured with multiple stab wounds. Reyes and Luis Cuadra testified that they returned to Reyes's home after a night of dancing to encounter Collazo by a car that was parked nearby. Reyes testified that she had ended a long-term relationship with Collazo several months prior to that night. Reyes and Cuadra testified that Reyes and Collazo exchanged words before Reyes and Cuadra drove away. When they again returned to Reyes's home, Collazo's car was still parked nearby. Cuadra remained in the car while Reyes went inside her home. Reyes testified that Collazo accessed her home with a key that she had given him during their relationship, and she found Collazo in her bedroom. After telling Collazo to leave her home, Reyes exited the bedroom and called the police for assistance. Reyes heard Collazo rummaging in the kitchen. As Reyes was exiting the front door, Collazo grabbed her hair from behind and began stabbing her. Reyes fell on the ground in her yard with Collazo over her. When Reyes called Cuadra for assistance, Cuadra knocked Collazo off Reyes and broke the knife Collazo was using to stab Reyes.

Collazo testified that he and Reyes were supposed to go on a date that night, but Reyes never arrived to pick him up. Collazo arrived at Reyes's home just as she was arriving home with Cuadra. Reyes began yelling at Collazo while Collazo remained calm. Reyes eventually told Collazo that she would take Cuadra home and would further speak with him when she returned. Collazo went inside Reyes's home to wait. When Reyes returned, Cuadra was still with her. After a heated exchange, Collazo was exiting the door to leave in response to Reyes's request when Cuadra began pushing him from behind. Collazo then saw that Cuadra had two knives, so he began to struggle with Cuadra. When Reyes tried to intervene in the struggle, she was stabbed.

Collazo also testified that Reyes had borrowed money from him that she never repaid, and he mentioned the money during their second exchange. Furthermore, a recording of a subsequent phone call Reyes made to Collazo was introduced into evidence. In the phone call, Reyes accused Collazo of seeing another woman.

When the police officers and ambulance arrived at Reyes's home, Collazo had left, but Cuadra remained at the scene and provided a witness statement. One knife was recovered at the scene, which was a knife taken from Reyes's kitchen. The blade of the knife was broken off from the knife's handle. A cup was also recovered at the scene. Reyes testified that she had asked Cuadra to get her water because she felt faint, and Cuadra testified that he used the cup to get the water.

Based on the evidence presented, the jury convicted Collazo of aggravated assault.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In order to establish that trial counsel rendered ineffective assistance, Collazo is required to "establish two components by a preponderance of the evidence: deficient performance of trial counsel and harm resulting from that deficiency that is sufficient to undermine the confidence in the outcome of the trial." *Ex parte Moore*, 395 S.W.3d 152, 157 (Tex. Crim. App. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish deficient performance, Collazo is required to prove that his attorney's performance "'fell below an objective standard of reasonableness' under prevailing professional norms and according to the necessity of the case." *Id*. (quoting *Strickland*, 466 U.S. at 687–88). To establish harm, Collazo is required to "demonstrate that he was prejudiced by his attorney's performance or that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. at 158 (quoting *Strickland*, 466 U.S. at 694).

"An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id*. Therefore, Collazo "'must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Ex parte Moore*, 395 S.W.3d at 157 (quoting *Strickland*, 466 U.S. at 689).

"A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal." *Thompson*, 9 S.W.3d at 813. "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Id.* "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). In the absence of a developed record, we will not "speculate as to the reasons why trial counsel acted as he did, rather [we] must presume the actions were taken as part of a strategic plan for representing the client." *Rodriguez v. State*, 336 S.W.3d 294, 302 (Tex. App.—San Antonio 2010, pet. ref'd).

Collazo contends trial counsel was ineffective in failing to request a jury instruction on self-defense. Based on Collazo's testimony at trial, however, trial counsel could have elected not to make such a request because the instruction did not exactly fit the facts trial counsel wanted the jury to believe. Trial counsel may have wanted the jury to acquit Collazo on the basis that Reyes was accidently stabbed by either himself or Cuadra during their struggle. Trial counsel may have believed that instructing the jury about a justification for Collazo stabbing Reyes would detract from that story. Alternatively, trial counsel may have decided not to request the instruction because Collazo adamantly denied that he stabbed Reyes during cross-examination, and trial

counsel may have believed that requesting the instruction could damage Collazo's credibility. *See Posey v. State*, 966 S.W.2d 57, 63 (Tex. Crim. App. 1998); *see also Juarez v. State*, 308 S.W.3d 398, 401 (Tex. Crim. App. 2010) (noting "defendant must admit to all elements of a charged offense before the defendant will be entitled to a defensive instruction"). The record in this appeal simply is not sufficiently developed for us to determine trial counsel's reasons for not requesting the jury instruction. *See Thompson*, 9 S.W.3d at 814. Accordingly, Collazo's first issue is overruled; however, Collazo still "can resubmit his claim via an application for writ of habeas corpus." *Id*.

## SUFFICIENCY OF THE EVIDENCE

In reviewing the sufficiency of the evidence to support a criminal conviction, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S.Ct. 1763 (2012). "This standard recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence . . . ." *Id*. This court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by re-evaluating the weight and credibility of the evidence. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

In arguing his sufficiency complaint, Collazo sets forth reasons why the testimony of Reyes and Cuadra should be rejected in favor of his testimony. Such an argument ignores the applicable standard of review. The jury was free to believe Reyes's and Cuadra's testimony and to reject Collazo's testimony. *See Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982). Moreover, with regard to the alleged inconsistencies between Reyes's and Cuadra's testimony, the jury also was free to accept portions of the testimony of either witness and to reject other portions. *See id*. Accordingly, Collazo's sufficiency complaint is overruled.

## CROSS-EXAMINATION

In his third issue, Collazo contends the trial court erred in refusing to permit him to question Cuadra about his immigration status. Collazo asserts that the possibility of deportation was a motive for Cuadra to falsify his testimony in order to avoid any criminal liability for the events that transpired. Collazo further asserts he was harmed by the trial court's refusal to allow Cuadra to be cross-examined on this issue because the jury was unable to properly judge Cuadra's credibility and the weight to be given to his testimony.

A prosecution witness's possible motive for testifying against a defendant "is never a collateral or irrelevant inquiry, and the defendant is entitled, subject to reasonable restrictions, to show any relevant fact that might tend to establish . . . motive . . . on the part of any witness testifying against him." *Billodeau v. State*, 277 S.W.3d 34, 42–43 (Tex. Crim. App. 2009). "Nonetheless, the trial judge retains wide latitude to impose reasonable limits on such cross-examination 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). In order to cross-examine a witness about a "vulnerable relationship" with the State, "[t]here must be some logical connection between that 'vulnerable relationship' and the witness's potential motive for testifying as he does." *Id*. at 148. In this case, Collazo argues there is a logical connection between Cuadra's immigration status and his motive for testifying in such a manner as to place criminal responsibility for Reyes's stabbing on Collazo, as opposed to taking any responsibility for the struggle which could put him at risk for deportation proceedings.

For purposes of this opinion, we decline to address whether the trial court erred in limiting the cross-examination in this manner because we hold that any such error would be harmless beyond a reasonable doubt. In reviewing the record for harm in this circumstance, we first assume

the damaging potential of the cross-examination was fully realized, and then determine whether the error was harmless beyond a reasonable doubt in light of the following factors: "(1) [t]he importance of the witness's testimony in the prosecution's case; (2) [w]hether the testimony was cumulative; (3) [t]he presence or absence of corroborating or contradicting testimony of the witness on material points; (4) [t]he extent of cross examination otherwise permitted; and (5) [t]he overall strength of the prosecution's case." *Shelby v. State*, 819 S.W.2d 544, 546–47 (Tex. Crim. App. 1991) (citing *Delaware v. Van Arsdall*, 475 U.S. 673 (1986)); *Montgomery v. State*, 383 S.W.3d 728, 729 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

In accordance with this standard, we will assume that Cuadra's immigration status would provide the jury with a basis upon which to question Cuadra's credibility. Although Cuadra's testimony confirmed Reyes's version of the events, his testimony was duplicative of her testimony. Moreover, recordings of the 911 calls Reyes made corroborated her version of the events as did the testimony of one of the neighbors who saw one male attacking a female and another male knocking the first male off the female. In addition, the physical evidence gathered at the scene corroborated Cuadra's testimony that he broke the knife used in the stabbing and gave Reyes a cup of water. Trial counsel was able to extensively cross-examine Cuadra regarding the details of his testimony and to focus the jury's attention on possible inconsistencies. Given Reyes's testimony, the 911 calls, and the nature of Reyes's injuries, the prosecution's case was strong even absent Cuadra's testimony. Accordingly, we hold that any error in not allowing trial counsel to cross-examine Cuadra was harmless beyond a reasonable doubt.

## RULE 614

In his fourth issue, Collazo contends the trial court abused its discretion in denying his motion for a mistrial based on a violation of Rule 614. Collazo argues that the prosecutor spoke

to one of the custodians of Reyes's hospital records in the presence of the second custodian of Reyes's hospital records.

Rule 614 provides for the exclusion of witnesses from the courtroom during trial. TEX. R. EVID. 614. The rule's purpose is to prevent one witness's testimony from influencing the testimony of another witness. *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005); *State v. Saylor*, 319 S.W.3d 704, 709–10 (Tex. App.—Dallas 2009, pet. ref'd). The rule is violated "'when a nonexempt prospective witness remains in the courtroom during the testimony of another witness, or when a nonexempt prospective witness learns about another's trial testimony through discussions with persons other than the attorneys in the case.'" *Saylor*, 319 S.W.3d at 710 (quoting *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 117 (Tex. 1999)). Even if a witness violates the rule, however, the trial court has discretion to allow the witness to testify. *Id*. The trial court's decision to allow the testimony is reviewed on appeal under an abuse of discretion standard. *Id*.

Reyes was in the hospital for one week receiving treatment for her injuries. Karen Rochester testified as the custodian of records for University Health Systems, and a portion of Reyes's medical records were introduced into evidence based on her testimony. Leticia Borrego testified as the custodian of records for University Hospital, and Reyes's radiology records were introduced into evidence based on her testimony. On cross-examination, Borrego admitted that she had spoken with the prosecutor in the hallway and other people were sitting in front of her during the conversation. Borrego stated that she did not know if those people were witnesses. Borrego also admitted that the prosecutor spoke to another person in front of Borrego. At the conclusion of the testimony, outside the presence of the jury, Collazo moved for a mistrial.

The prosecutor who spoke to Rochester and Borrego stated that he did not discuss the substance of their testimony with them in the hallway. Instead, he simply explained the procedure to expect when they were on the witness stand in terms of their being asked a series of questions.

The trial court denied the motion for mistrial, noting, "These two witnesses are custodians of records and they really don't have much to contribute except for the records that they are bringing, so it's not as if they can manufacture or they can be persuaded or they can change their testimony."

Even if we accept that the conversation between the prosecutor and the two witnesses was a technical violation of Rule 614, the trial court did not abuse its discretion in denying the motion for mistrial. *See id.* Given the nature of the testimony elicited from Rochester and Borrego, the prosecutor speaking to the witnesses in front of each other could not have influenced their testimony. Collazo's fourth issue is overruled.

### EXPERT TESTIMONY

In his final issue, Collazo argues that the trial court erred in allowing a trauma surgeon to testify regarding the depth of Reyes's stab wounds.

In determining whether a trial court abused its discretion in evaluating a witness's qualifications as an expert, we consider three criteria: (1) whether the field of expertise is complex; (2) whether the expert's opinion is conclusive; and (3) whether the area of expertise is central to the resolution of the lawsuit. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). The focus in determining an expert's qualifications is on the "fit" between the expert's background and the subject matter at issue. *Id.* at 133.

Dr. Ronald Stewart, the trauma surgeon who initially treated Reyes's injuries at the hospital, generally described her injuries and the treatment she was provided, including treatment for a collapsed lung and internal bleeding. After this testimony, the following exchange occurred as Dr. Stewart was testifying from the CAT scans contained in Reyes's medical records:

> Q. And is there a way for us to estimate how deep the knife, the stabber had to go in order for her to suffer the pneumothorax of the left lung?
> A. Well, we can give ballpark estimates. And, let's be clear, I'm not a forensic pathologist.
> Q. Fair enough.

A.     But you see this track goes here.  Now we don't — these images were basically designed for us to look on the inside, so the technician didn't carry it all the way out to the chest, but you can measure with a ruler — ruler, at least I think I can.  Let's see if I can make this work.

So, you can actually measure with the ruler.  We kind of run off the margin here, but that's at about 7 — that is 6.7, 6.8 centimeters.  So it's hard to measure on this image, but there it would be at least 7 centimeters.  We could look over here and you could say — so here we are looking at least 7 centimeters.

The reason I say you can't really measure, it is like the — if you are looking at me and my fatty tissue is mushy, so if you pushed really hard, you could — you could — if I had a — say someone stabbed me with a 5 centimeter knife and you —

[DEFENSE COUNSEL]:  Your Honor, I am going to object to this answer.  He's already said that he's not a forensic pathologist.  He seems to be going into an area that is outside of his area of expertise.

THE COURT:  That's overruled.  You may proceed.

THE WITNESS:  So, anyway, if you push hard enough, you can squish the fatty tissues out of the way.  So it is just an estimate.  But what we can — I'll just say — I'll just be clear, I think what you are saying is the distance between your subcutaneous tissue and fatty and chest is about 7 or 8 centimeters there.  So it is about (indicating) 7 or 8 centimeters long.

Q.     So, suffice it to say, it had to go through the skin and through the ribcage in order to cause the pneumothorax?

A.     That's correct.

Based on this testimony, the record establishes that Dr. Stewart was measuring the depth of Reyes's wound from the CAT scan images or x-rays.  Although Dr. Stewart acknowledged that forensic pathologists have specialized training in investigating the manner in which an injury occurred, for instance the trajectory of the stabbing motion, measuring the depth of a wound from an image or x-ray does not appear to be overly complex, and Dr. Stewart explained the possible discrepancies in his manner of measurement.  Moreover, the depth of the stab wounds certainly was not central to the resolution of the case.  Dr. Stewart had been a trauma surgeon for eighteen years, and he testified that his training is "to determine what's injured and fix that."  Because the record demonstrates an appropriate "fit" between Dr. Stewart's background and his testimony regarding the depth of the stab wounds, the trial court did not abuse its discretion in overruling Collazo's objection to the testimony.

## CONCLUSION

The trial court's judgment is affirmed.

Patricia O. Alvarez, Justice

DO NOT PUBLISH